APPEAL NO. 23-13443-AA

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

CHERIESE JOHNSON,

Plaintiff-Appellant

vs.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendants-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

---

BRIEF OF PLAINTIFF-APPELLANT

---

Heather K. Karrh
Ga. Bar No. 408379
ROGERS, HOFRICHTER & KARRH, LLC
225 S. Glynn Street, Suite A
Fayetteville, GA 30214
(770) 460-1118

Dated: March 6, 2024

Johnson v. Reliance Standard Life Ins. Co.
Docket No.: 23-13443-AA

## **CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1,

Appellant certifies that the following individuals have an interest in the outcome of

the above-referenced case:

Trial Court Judge:    Hon. Steven D.  Grimberg

N.D. Georgia, Atlanta Division

Attorneys:    Heather K. Karrh, Esq.    (Appellant)

Rogers, Hofrichter & Karrh, LLC

Joshua Bachrach, Esq.    (Appellee)

Parks Stone, Esq.    (Appellee)

Wilson Elser Moskowitz    (Appellee)

Edelman & Dicker, LLP

Persons:    Cheriese Johnson    (Appellant)

Corporations:    Reliance Standard Life    (Appellee)

Insurance Company

Tokio Marine Holdings Inc.

Parent of Appellee (TMNF)

i

Johnson v. Reliance Standard Life Ins. Co.
Docket No.: 23-13443-AA

## **STATEMENT REGARDING ORAL ARGUMENT**

This case involves the application of federal law on an issue of coverage under a disability insurance policy.  Appellant requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a).  This appeal is not frivolous.  To Appellant's knowledge the Eleventh Circuit has never addressed whether a prior treatment clause excludes an "unsuspected" condition although many other Circuits have.   Those Circuits have decided in Appellant's favor.  The facts of this case are largely agreed upon by the parties.  Wherefore this case presents almost a pure legal question and is highly suitable for oral argument.  Appellant also believes that oral argument will aid the decisional process by honing down the numerous decisions from other Circuits on this issue to their logical core.   Appellant welcomes the opportunity to engage in an active dialogue with this Court.

# **TABLE OF CONTENTS**

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement......................i

Statement Regarding Oral Argument..........................................................................ii

Table of Contents.......................................................................................................iii

Table of Citations.......................................................................................................iv

Statement of Subject Matter and Appellate Jurisdiction........................................viii

Statement of the Issues...............................................................................................1

Statement of the Case.................................................................................................1

Statement of Facts......................................................................................................2

Standard of Review....................................................................................................7

Summary of the Argument.........................................................................................7

Argument and Citation of Authority.........................................................................8

Conclusion................................................................................................................30

Certificate of Compliance........................................................................................31

Certificate of Service...............................................................................................32

## **<u>TABLE OF CITATIONS</u>**

**<u>Cases</u>**                                                                                                                  **<u>Page</u>**

<u>Acree v. Hartford Life & Acc. Ins. Co.</u>,                                                    9
917 F. Supp. 2d 1296, 1304–05 (M.D. Ga. 2013)

<u>Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan</u>,       7
833 F.3d 1299, 1306 (11th Cir. 2016)

<u>App v. Aetna Life Ins. Co.</u>,                                                                    12,17,
2009 WL 2475020, *8 (M.D. Pa. 2009)                                            22

<u>Blankenship v. Metro. Life Ins. Co.</u>,                                                  7,10
644 F.3d 1350, 1354 (11th Cir. 2011)

<u>Ceccanecchio v. Continental Cas. Co.</u>,                                            13,18,
50 Fed. Appx. 66, 72 (3d Cir. 2002)                                                22

<u>Doe v. Aetna Life Ins. Co.</u>,                                                                9
No. 1:17-CV-01167-SDG,
2020 WL 13532858, at *6 (N.D. Ga. Jan. 27, 2020)

<u>Doroshow v. Hartford Life & Acc. Ins. Co.</u>,                                    23
574 F.3d 230 (3rd Cir. 2009)

<u>Dowdall v. Com. Travelers Mut. Acc. Ass'n of Am.</u>,                      23
344 Mass. 71, 181 N.E.2d 594 (1962)

<u>Dutkewych v. Standard Ins. Co.</u>,                                                     29
No. 12-CV-11073, 2014 WL 1334169, at *7 (D. Mass. Mar. 29, 2014)

<u>Ermenc v. American Family Mutual ins. Co.</u>,                                13, 17,
221 Wis.2d 478, 484, 585 N.W.2d 679, 682 (Wis. 1998)                22

| **Cases** | **Page** |
|---|---|
| Fath v. UNUM Life Ins. Co. of Am., | 24, 25 |
| 928 F. Supp. 1147, 1148 (M.D. Fla. 1996), aff'd sub nom. | |
| Fath v. Unum Life Ins. Co., 119 F.3d 10 (11th Cir. 1997) | |
| | |
| Ferrizzi v. Reliance Standard Life Insurance Company, | 9,10, |
| 792 Fed.  Appx. 678, 684 (11th Cir. 2019). | 20,21, |
| | 22 |
| | |
| Florence Nightingale Nursing Serv., Inc. v. | 15 |
| Blue Cross /Blue Shield of Alabama, | |
| 41 F.3d 1476, 1484 (11th Cir. 1995) | |
| | |
| Garcon v. United Mut. of Omaha Ins. Co., | 9 |
| 779 Fed.  Appx. 595, 599–600 (11th Cir. 2019) | |
| | |
| Hall v. Continental Cas. Co., | 13, 22 |
| 207 F. Supp.2d 903, 912 (W.D. Wis. 2002) | |
| | |
| *Horneland v. United of Omaha Ins. Co., | 10,13, |
| 717 Fed.  Appx. 846, 855 (11th Cir. 2017) | 14, 21 |
| | |
| Horton v. Reliance Standard, | 9 |
| 141 F.3d 1038, 1040 (11th Cir. 1998) | |
| | |
| *Hughes v. Bos. Mut. Life Ins. Co., | 11,12 |
| 26 F.3d 264, 269 (1st Cir. 1994). | |
| | |
| Law v. Aetna Life Ins. Co., | 25, 26 |
| No. 2:13-CV-2267-JHH, | |
| 2015 WL 260833, at *4 (N.D. Ala. Jan. 21, 2015) | |
| | |
| Lawson v. Fortis Ins. Co., | 12 |
| 301 F.3d 159, 165 (3rd Cir. 2002) | |

| **Cases** | **Page** |
|---|---|
| Marshall v. UNUM Life Ins. Co., <br> 13 F.3d 282 (8th Cir. 1994) | 26 |
| McLeod v. Hartford, <br> 372 F.3d 618, 626 (3d Cir. 2004) | 13,16, <br> 22, 27, <br> 28 |
| *Mitzel v. Anthem Life Ins. Co., <br> 351 Fed. Appx. 74 (6th Cir. 2009) | 16 |
| Mutual Life Insurance Company of New York v. Bohannon, <br> 488 S.W.2d 476, 477-78 (Tex.Civ.App.1972) | 28 |
| *Pitcher v. Principal Mutual Life Insurance Co., <br> 93 F.3d 407, 410 (7th Cir.1996) | 19,27, <br> 28 |
| Williams v. United of Omaha Life Ins. Co., <br> No. 8:20-CV-1001-JSM-AEP, <br> 2021 WL 1648526, at *3 (M.D. Fla. Apr. 12, 2021) | 26, 27, <br> 28 |
| Woo v. Deluxe Corp., <br> 144 F.3d 1157, 1159 (8th Cir. 1998) | 3 |

| **Statutes and Rules** | **Page** |
|---|---|
| 28 U.S.C. § 1331 | viii |
| 28 U.S.C. § 1291 | viii |
| 29 U.S.C. § 1132 | viii |
| Fed. R. App. P. 3 | viii |
| Fed. R. App. P. 4(a)(1)(A) | viii |

vi

Fed. R. App. P. 26.1                                          i

Fed. R. App. P. 32(a)(5)                                     31

Fed. R. App. P. 32(a)(6)                                     31

Fed. R. App. P. 32(a)(7)(B)(iii)                            31

Fed. R. of App. P. 34(a)                                     ii

11th Cir. R. 26.1-1                                           i

## <u>STATEMENT OF SUBJECT MATTER AND APPELLATE</u>

## <u>JURISDICTION</u>

This case was brought under the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. § 1132 in the United States District Court for the Northern District of Georgia, Atlanta Division. The District Court had jurisdiction based upon 28 U.S.C. § 1331.

Judge Steven D. Grimberg granted Appellee's Motion for Summary Judgment on September 29, 2023. (Doc 40). Judge Grimberg's decision was a final order that disposed all Appellant's claims. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291 and Rules 3 and 4 of the Federal Rules of Appellate Procedure. Appellant timely filed a Notice of Appeal on October 13, 2023. (Doc 42). <u>See</u>, Fed. Rule App. Proc. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

I.    Whether the District Court erred in holding that Appellee met its burden to prove that the pre-existing condition properly applied to a case in which the claimant was not treated for a suspected illness during the look-back period.

II.    Whether the District Court erred by finding that the structural conflict of interest was unremarkable.

## STATEMENT OF THE CASE

On July 19, 2021, Appellant Cheriese D. Johnson (hereinafter "Johnson") filed a complaint against Appellee Reliance Standard Life Insurance Company (hereinafter "Reliance Standard") alleging a claim under ERISA for long term disability benefits (hereinafter "LTD"). (Doc 1). Reliance Standard answered the complaint denying that Johnson was entitled to LTD benefits on January 4, 2022. (Doc 7). On December 22, 2022, Johnson filed a motion for judgment on the administrative record with a brief. (Doc. 26). That day, Reliance Standard filed a motion for summary judgment with exhibits including briefs, the insurance policy and the administrative record. (Doc 27) (Doc 28). The parties filed responses in opposition with briefs and exhibits. (Doc 29) (Doc 32). On January 12, 2023, Johnson filed her response to the statement of material facts. (Doc 33). On January 26, 2023, the parties filed cross briefs in reply. (Doc 34) (Doc 35). On September 29, 2023, Judge Steven D.

1

Grimberg granted Reliance Standard's motion and denied Johnson's motion.  (Doc 40).  Johnson timely filed a notice of appeal on October 13, 2023.   (Doc 42).

## STATEMENT OF FACTS

### I.    Overview

Johnson worked for the William Carter Company as a Senior Human Resources Business Solutions Analyst.  (Doc 28 Pg 130).  As a result of that employment, she was covered by a long term disability policy issued by Reliance Standard to the William Carter Company.  (Doc 28-4 Pg 1-31).  She began work as an official employee on July 14, 2016 after having worked there as an independent contractor for some time prior.  (Doc 28 Pg 137, Doc 28 Pg 139).  Her long term disability insurance became effective October 12, 2016.  (Doc 28 Pg 108).

Following a lung resection surgery in February 2017, Johnson was determined to have scleroderma, and thereafter followed primarily by her rheumatologist, Dr. Roel Querubin. (Doc 28-3 Pg 896, Doc 28-3 Pg 920, Doc 28 Pg 225, Doc 28 Pg 122). Johnson could no longer work by April 3, 2017.  (Doc 28 Pg 137, Doc 28 Pg 210, Doc 28-3 Pg 920).   Her treating neurologist, Dr. Alan Maloon wrote on April 24, 2017, that Johnson was unable to work due to severe, intractable pain and numbness in her extremities.  (Doc 28 Pg 144).

Because Johnson had not worked an entire year after her effective insurance

date, the central issue in this case is whether she is excluded from coverage due to the policy's pre-existing condition clause. (Doc 28 Pg 107-111). The policy excludes coverage for disabilities resulting from pre-existing conditions during the first 12 months an individual is covered. (Doc 28-4 Pg 22). The policy defines "pre-existing conditions" as:

> any Sickness or Injury, *for which*, the Insured received medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to the Insured's effective date of insurance. (Doc 28-4 Pg 23) (emphasis added).

Johnson was found disabled by Reliance Standard and received all of her short term disability benefits up to October 2, 2017. (Doc 28 Pg 85). When Johnson applied for long term disability, she and her doctor specifically attributed her restrictions to a primary diagnosis of scleroderma. (Doc 28 Pg 135-36).[1]

Dr. Querebin completed an attending physician statement on October 8, 2017, opining that Johnson was restricted to sitting, standing and walking only one to three hours per day. (Doc 28 Pg 135-36).

---

[1]Scleroderma is a disorder of the connective tissue characterized by induration and thickening of the skin, by abnormalities and by fibrotic degenerative changes in various body organs, including the heart, lungs, kidneys, and gastrointestinal tract. <u>Woo v. Deluxe Corp.</u>, 144 F.3d 1157, 1159 (8th Cir. 1998)

In an October 10, 2017 letter, Dr. Querebin stated that he expected Johnson to be able to return to work January 1, 2018. (Doc 28 Pg 192). In a January 2, 2018, letter, he wrote:

> I would recommend a modified work schedule for the reintroduction period..., which would allow additional recuperation time as she acclimates to the demands of the work week. (Doc 28-3 Pg 901).

Unfortunately, that anticipated improvement did not occur. (Doc 28-3 Pg 962). On May 5, 2018, Johnson's chiropractor, Dr. Debra Schreibman submitted a detailed letter stating that Johnson was being treated daily due to her "extreme musculoskeletal issues" caused by scleroderma and was indefinitely unable to perform her job. (Doc 28-3 Pg 962). On May 15, 2018, Johnson's psychotherapist whom she consulted for pain management purposes stated that she was unable to return to any gainful employment in part due to difficulty breathing caused by the scleroderma and her struggles with awareness that she is not expected to live many more years. (Doc 28-3 Pg 969-73). Johnson remains out of work, and has been awarded Social Security disability benefits. (See Doc 32-2). However, due to the timing of the case, there are no further medical statements regarding her disability status in the administrative record. (Doc 28, 28-1, 28-2, 28-3 Pg32- 1029).

## II.    Denial of Long Term Disability

On October 3, 2017, Johnson applied for long term disability benefits under the policy. (Doc 28 Pg 130-31). Because she ceased work within 12 months of becoming covered under the policy, Reliance Standard undertook a pre-existing condition investigation, directed at determining whether Johnson had been treated for her disabling condition between July 12, 2016, and October 12, 2016 (the "look-back" period). (Doc 28 Pg 120-21). By letter dated January 4, 2018, Reliance Standard denied the claim. (Doc 28 Pg 107-11). Reliance Standard reasoned:

> What appears to have initially caused you to stop working at the date of loss and ongoing is persistent hand pain and swelling, problems with short-term memory and cognitive, Raynaud type symptoms, and chronic pain. You reported symptoms of and received treatment for: nausea, vomiting, cough, fatigue, GERD, hypertension, muscle weakness, cognitive impairment, fatigue, reduced appetite, syncope, dizziness, generalized aching, swelling of feet and hands, body aches, and a loss of motor skills during the pre-existing time period of 7/12/2016 to 10/12/2016. These noted symptoms contributed to and resulted in your impairing conditions at the date of loss and continue to contribute to your impairment of the following conditions: Raynaud's, Interstitial Lung Disease, paresthesias, Fibromyalgia, and chronic pain, of which are considered to be pre-existing diagnoses.

(Doc 28 Pg 109-10).

By e-mail dated February 13, 2018, Johnson appealed that decision. (Doc 28-3 Pg 920). She emphasized that she was claiming disability due to scleroderma, which had not been diagnosed until March 2017, comfortably after the look-back

period, and thus, could not be considered a pre-existing condition. (Doc 28-3 Pg 920).

On appeal, Reliance Standard consulted with a peer reviewer, Dr. Robert J. Cooper, an endocrinologist. (Doc 28-3 Pg 938-45, Doc 28-3 Pg 931). Notably, Dr. Cooper agreed with the diagnosis of scleroderma. (Doc 28-3 Pg 942). However, he did find Johnson's condition pre-existing, stating:

> The claimant received treatment for cough/asthma on 9/13/2016 by Dr. Binu and by Ms. Clark on 9/6/2016. The claimant saw Alan Maloon, M.D., neurosurgery, for complaints of cognitive impairment, numbness and pain in the extremities, on 9/30/2016. (Doc 28-3 Pg 942).

Dr. Cooper also contended that Johnson had no restrictions and limitations, but this was not relied upon in Reliance Standard's final decision on July 18, 2018. (Doc 28-3 Pg 943) (Doc 28 Pg 115-119). In its final decision letter, Reliance Standard upheld its denial solely on the basis that Johnson had been treated for her disabling condition during the look-back period. (Doc 28 Pg 115-119). It reasoned:

> . . . it is apparent that you received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs, or medicines, for your *Sickness* or *Injury* during the *Pre-existing Condition* period of July 12, 2016, to October 12, 2016. Specifically, consultations with Ms. Clark noted treatment for gastrointestinal discomfort, chronic bronchitis, muscle pain and weakness, and Dr. Maloon noting treatment for extremity pain. In addition, pharmacy reports from Publix revealed prescribed drugs or medicine for symptoms related to joint pain, depression, anxiety, stomach and esophagus problems. Thus, the medical documentation

> provided confirm treatment and or consultation for
> multiple ailments during the *Pre-existing Condition* period.
> (Doc 28 Pg 118).

Significantly, though Johnson's appeal was grounded in the fact that her disabling limitations were caused by scleroderma, a non-pre-existing condition, the final denial does not reference scleroderma at all. (Doc 28 Pg 115-119). Reliance Standard never actually determined which symptoms were allegedly caused by scleroderma, thus calling into question whether Reliance Standard made any sort of decision much less a reasonable one. (Doc 28 Pg 115-119).

## STANDARD OF REVIEW

This Court reviews "'*de novo* a district court's ruling affirming or reversing a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision.'" Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan, 833 F.3d 1299, 1306 (11th Cir. 2016) (quoting Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011)).

## SUMMARY OF ARGUMENT

The District Court erred in finding that Reliance Standard met its burden to prove that its interpretation of the pre-existing condition clause was correct and reasonable. Indeed, Reliance Standard was unable to prove that it acted in good faith because it applied a prior treatment exclusion in a case where the disabling condition

was not even suspected during the look-back period. Reliance Standard was unable to prove that it acted in good faith when it applied a pre-existing condition exclusion wherein the symptoms which existed during the look-back period were non-specific (some of the symptoms could have been caused by the medical condition for which Johnson ultimately claimed benefits, but could also have been caused by other medical conditions). Reliance Standard's interpretation (the interpretation accepted by the District Court) has been found to be unreasonable by the vast majority of jurisdictions that have examined this issue. Even the case law proffered by Reliance Standard to the District Court overwhelming supports Johnson. Finally, the District Court erred in finding that the conflict of interest did not taint Reliance Standard's decision.

## ARGUMENT AND CITATIONS OF AUTHORITY

The Eleventh Circuit has adopted a six-step approach when reviewing most ERISA plan benefit denials:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the

more deferential arbitrary and capricious standard).
(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
(5) If there is no conflict, then end the inquiry and affirm the decision.
(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Acree v. Hartford Life & Acc. Ins. Co., 917 F. Supp. 2d 1296, 1304–05 (M.D. Ga. 2013) (citations omitted).

Here there is discretion in the policy, but because Reliance Standard denied Johnson under the pre-existing condition clause solely, the discretion has very little significance because Reliance Standard bears the burden of proof at steps one and three. Horton v. Reliance Standard, 141 F.3d 1038, 1040 (11th Cir. 1998); see also Garcon v. United Mut. of Omaha Ins. Co., 779 Fed. Appx. 595, 599–600 (11th Cir. 2019); Doe v. Aetna Life Ins. Co., No. 1:17-CV-01167-SDG, 2020 WL 13532858, at *6 (N.D. Ga. Jan. 27, 2020); Ferrizzi v. Reliance Standard Life Insurance Company, 792 Fed.Appx. 678, 684 (11th Cir. 2019). This means that Reliance Standard must prove its decision was correct and reasonable. Indeed in Ferrizzi, the panel clearly stated when determining whether Reliance Standard's decision was arbitrary and capricious that it must:

determine if Reliance reasonably proved that Ferrizzi's substance abuse/drug dependency is such a pre-existing condition under the terms of the policy. Id. (emphasis

supplied).

It cannot meet its burden because its decision was unreasonable under the plain terms of the policy and contrary to virtually all case law on this subject. Because Reliance Standard cannot prove that its decision was reasonable, the inquiry ends. Blankenship, at 1355 ("If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision. [step four]"). If somehow Reliance Standard were able to prove that its decision was reasonable the burden would shift back to Johnson to prove that Reliance Standard's conflict of interest tainted the decision. Ferrizzi, at 686 ("where a conflict exists and a court must reach step six, 'the burden remains on the plaintiff.'"). Here, there was no need to reach step six. However, Johnson easily meets her burden of proving that Reliance Standard's conflict was a factor in its arbitrary and capricious decision.

## I.    The District Court erred in finding that Reliance Standard's interpretation of the pre-existing condition was reasonable because it conflicts with plain meaning of the plan language.

In the Eleventh Circuit, Courts first look to the ERISA "plan's text and ...give the plan terms their plain and ordinary meaning." Horneland v. United of Omaha Ins. Co., 717 F. App'x 846, 855 (11th Cir. 2017). Interpreting the pre-existing clause in a plain and ordinary manner in the case provides coverage for Johnson.

There are two basic types of pre-existing conditions in insurance contracts. A

routine pre-existing condition clause aims to bar coverage for claims arising from conditions existing before the effective date of an insurance policy; such policies focus on the prior origination or prior manifestation of the condition.  Hughes v. Bos. Mut. Life Ins. Co., 26 F.3d 264, 269 (1st Cir. 1994).

The second type and the one we have here "might be described more accurately as a 'recent treatment' exclusion" as its application actually depends upon treatment "for" the condition during the relevant period, not a retroactive conclusion as to existence of the condition during the relevant period.  Id.  Again, a pre-existing condition is defined in this policy as:

> any Sickness or Injury, *for which*, the Insured received medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to the Insured's effective date of insurance.  (AR 23) (emphasis added).

With this type of pre-existing condition Courts examine what it means to be treated "for" a condition during the "look-back period" sufficient to trigger a pre-existing condition.   When examining what the word "for" means there are two lines of legal reasoning.    Firstly, case-law holds that the plain ordinary meaning of the word "for" implies intent, and a doctor cannot treat a patient "for" a condition unless he knows what the condition is.  As such, a doctor cannot be said to have treated a patient for a condition during the look-back period, sufficient to trigger a pre-existing

11

condition exclusion, unless that condition was diagnosed, or <u>at the very least</u> <u>reasonably suspected</u>. <u>Hughes</u>, at 270.

Examining the same language as the First Circuit, The Third Circuit held:

> The word "for" connotes Intent. Webster's Dictionary states that "for" is "used as a function word to indicate a purpose" … In short, it is hard to see how a doctor can provide treatment "for" a condition without knowing what that condition is or that it even exists.

<u>Lawson v. Fortis Ins. Co.</u>, 301 F.3d 159, 165 (3rd Cir. 2002). In <u>Lawson</u> two days before the effective date the insured went to the ER with cough, fever, elevated pulse, and a swollen right eye. <u>Id</u>. She was diagnosed with an upper respiratory tract infection, and given antibiotics. <u>Id</u>. Five days after the policy effective date—the insured was diagnosed with leukemia. <u>Id</u>. Fortis denied coverage of the leukemia as pre-existing, asserting that the symptoms displayed at the ER visit were caused by leukemia and therefore the insured received treatment and advice for leukemia during the look-back period. The court disagreed finding that there was no evidence that the possibility that Elena's condition was actually leukemia ever entered the minds of Dr. Parikh. Therefore, it would not make sense to say that Dr. Parikh offered medical advice or treatment for Elena's leukemia. <u>Id</u>. at 166; see also, <u>App v. Aetna Life Ins.</u> <u>Co.</u>, 2009 WL 2475020, *8 (M.D. Pa. 2009) (Although the plaintiff was diagnosed with and received treatment during the look-back period for symptoms that, in

hindsight, appeared consistent with lupus, there is no evidence that her doctor considered her to be suffering from lupus until well after the look-back period.  A mis-diagnosis or an unsuspected condition manifesting non-specific symptoms is a not a pre-existing condition).

Secondly, overlapping this principle that a doctor must be aware of a condition in order to be treating his patient for that condition, and so trigger the pre-existing condition exclusion, is a line of cases holding that the presence of vague or non-specific symptoms during the look-back period, that could be caused by the medical condition for which the claimant ultimately claims benefits but could also be caused by other medical conditions, is insufficient to render the medical condition for which the claimant ultimately claims benefits pre-existing.   Ermenc v. American Family Mutual ins. Co., 221 Wis.2d 478, 484, 585 N.W.2d 679, 682 (Wis. 1998).  See also, Hall v. Continental Cas. Co., 207 F. Supp.2d 903, 912 (W.D. Wis. 2002); McLeod v. Hartford, 372 F.3d 618, 626 (3d Cir. 2004);  Ceccanecchio v. Continental Cas. Co., 50 Fed. Appx. 66, 72 (3d Cir. 2002).  The Eleventh Circuit has indicated that treatment for vague symptoms during the look-back period is not treatment for a "Sickness" sufficient to support a denial of coverage under a pre-existing condition clause.  Horneland, *supra*.  The Eleventh Circuit held:

> And this same logic dictates that muscle spasms cannot by themselves constitute a Pre-existing Condition. Muscle

13

> spasms are, like pain, soreness, or stiffness, a symptom of
> some underlying injury, disease, disorder, or condition.
> Muscle spasms are not a condition, nor are they an
> accidental bodily injury, a disease, or a disorder. Because
> a Pre-existing Condition must be either an accidental
> bodily injury, a disease, a disorder, or a condition, the
> Pre-existing Conditions Exclusion cannot apply to
> Plaintiff's back pain and muscle spasms. <u>Id</u>.

Both of the above cited lines of cases apply favorably to Johnson's situation.

Johnson was not diagnosed with scleroderma during the look-back period.

Importantly, Reliance Standard has no evidence that scleroderma was even

suspected. Thus, there is no evidence that this was a sickness "for" which Johnson

received treatment. The symptoms that Reliance Standard focused upon during the

look-back period were:

> persistent hand pain and swelling, problems with short-
> term memory and cognitive, Raynaud type symptoms, and
> chronic pain, nausea, vomiting, cough, fatigue, GERD,
> hypertension, muscle weakness, cognitive impairment,
> fatigue, reduced appetite, syncope, dizziness, generalized
> aching, swelling of feet and hands, body aches, and a loss
> of motor skills; (Doc 28 Pg 109-10).

and,

> gastrointestinal discomfort, chronic bronchitis, muscle pain
> and weakness, and ... extremity pain. In addition,
> pharmacy reports from Publix revealed prescribed drugs or
> medicine for symptoms related to joint pain, depression,
> anxiety, stomach and esophagus problems. (Doc 28 Pg
> 118).

These are vague symptoms that could be related to any number of conditions

beyond scleroderma.  Indeed, during the look-back period many of these symptoms were attributed to many other sicknesses.  Johnson was treated for fibromyalgia, borderline lupus erythematosus, Helicobacter pylori and hypertension amongst other diseases, but she was never determined to have scleroderma even as a "probable" or "suspected" sickness.  (Doc 28 Pg 218) (Doc 28-2 Pg 771).

Further, the policy language excludes on the basis of <u>conditions</u>, not symptoms which were unexplained during the look-back period.  By attempting to rewrite its policy to exclude any claimant with any symptoms at all during the look-back period, Reliance is adding/changing the terms to the policy.  The Eleventh Circuit has held that a plan administrator's decision "is arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan."  <u>Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama</u>, 41 F.3d 1476, 1484 (11th Cir. 1995) citations omitted.  Essentially what Reliance Standard is trying to do here is to convert its prior treatment clause into a much broader prior manifestation clause.  This is *per se* unreasonable under Eleventh Circuit law.

## II.   The District Court erred in finding that Reliance Standard met its burden of proof because an overwhelming number of cases throughout the Circuits hold that Reliance Standard's Interpretation is unreasonable.

Again, Reliance Standard argued that a prior treatment clause acts to exclude coverage when the disabling condition is not even suspected during the look-back

period and when symptoms during the look-back period are non-specific. The vast majority of jurisdictions that have examined this issue have held that this interpretation is arbitrary and capricious.

In Mitzel v. Anthem Life Ins. Co., 351 Fed. Appx. 74 (6th Cir. 2009) the plaintiff suffered joint pain and malaise during the look-back period. Id. at 76. Her doctors suspected SLE, RA or acute thyroiditis. Id. at 77. Her doctor referred her to the Cleveland Clinic and on June 18, 2004—five days after her effective date of coverage under the Plan—the Cleveland Clinic diagnosed Mitzel for the first time with Wegener's granulomatosis ("WG"), a life-threatening condition affecting multiple organs. Id. While her symptoms during the look-back period were consistent with the ultimate diagnosis of WG, they were non-specific, could have been caused by any number of medical conditions, and WG was never suspected during the look-back period. Id. at 84. Thus the WG could not be considered pre-existing. Id. Mitzel was decided under the arbitrary and capricious standard.

In McLeod, the claimant became disabled due to multiple sclerosis roughly nine months after the policy effective date. Id. at 621-622. During the look-back period, the claimant had consulted a doctor for numbness in her left arm. Id. at 621. There was no suggestion at that time that the claimant had multiple sclerosis, and the claimant had a history of cervical disc disease as well as cardiac insufficiency,

16

conditions that might also cause left arm numbness.  Id.  Four months after the policy effective date, the claimant was diagnosed with MS.  Id.  The claimant's own doctor testified that it was "likely" that her MS had begun years earlier, and that the left arm numbness in the look-back period was a manifestation of MS.  Id. at 621-622. Nevertheless, the court ruled that MS was not a pre-existing condition, and that the insurer could not engage in a backward-looking reinterpretation on non-specific symptoms that could be caused by multiple different medical conditions.  Id. at 628. The Third Circuit found that Hartford's interpretation was not even "plausible" much less reasonable.  Id. at 624.  Likewise, the App Court found that Aetna's interpretation that an unsuspected condition manifesting non-specific symptoms was subject to the pre-existing exclusion to be "without reason." Id. at *5-9.

In Ermenc, a health insurance policy excluded coverage for pre-existing conditions, defined as any condition for which the insured received treatment or advice five years prior to the policy effective date.  Id. at 483-484.  One month prior to the policy effective date, the insured sought treatment from her doctor for abdominal pain.  Id. at 480.  She was diagnosed with epigastric pain, and given Tagamet.  Id.  Four days later, she went to the emergency room with abdominal pain. Id. She was diagnosed with probable peptic ulcer disease, and given more Tagamet. Id. Just one week after the policy effective date, she was diagnosed with stomach

17

cancer, for which the insurer sought to avoid coverage on the basis that the treatment for symptoms of abdominal pain rendered the stomach cancer a pre-existing condition.  Id. The court ruled that abdominal pain was "nonspecific and could have been caused by a number of different things," such that the stomach cancer could not be considered pre-existing.  Id. at 485-486.  Further the Wisconsin Supreme Court stated that the insurance company's interpretation of the pre-existing condition clause was so unreasonable that to utilize it would render the policy illusory holding:

> Something more than general, nonspecific symptoms that become clear only by use of hindsight is required. To hold otherwise would reach an absurd result: denial of coverage would be so easy as to make the insurance contract meaningless.... We will not interpret an insurance contract to violate public policy. Cf. Meyer v. Classified Ins. Co., 192 Wis.2d 463, 468–69, 531 N.W.2d 416, 418 (Ct. App.1995) (noting that public policy disfavors illusory coverage).  Id. at 486.

In Ceccanecchio, the claimant became disabled four months after the policy effective date due to interstitial cystitis, a bladder condition that causes frequent and painful urination.  Id. at 67-68. During the look-back period, the claimant had complained to her gynecologist of "urinary frequence and urgency" but a work-up at that time was negative.  Id. The diagnosis of interstitial cystitis was made just three months after the policy effective date.  Id. at 68.  The court noted that even though the primary symptom of interstitial cystitis is frequent painful urination, that urinary

frequence is a non-specific symptom, that can be caused by multiple medical conditions. Id. at 73. Given the lack of diagnosis of interstitial cystitis prior to the effective date, and the presence of only non-specific symptoms, the court held the insurer's conclusion (that interstitial cystitis was pre-existing) was arbitrary and capricious. Id.

In Pitcher v. Principal Mutual Life Insurance Co., 93 F.3d 407, 410 (7th Cir.1996), the claimant was treated during the look-back period for a longstanding fibrocystic breast condition. Later after the commencement of the coverage period she was found to have a cancerous tumor in her left breast. Id. The insurer argued (like Reliance Standard does here) that coverage was precluded because the claimant received treatment for symptoms which ultimately proved to be breast cancer. The Seventh Circuit found: "Interpreting the language of Principal's insurance policy in an ordinary and popular sense" Pitcher did not receive treatment or service for breast cancer prior to September 17, 1992 "because...she was being monitored for the longstanding fibrocystic breast condition and not cancer during the pre-coverage period." Id. The Court further wrote:

> Because there is no ambiguity in the language of the insurance policy...and because the parties' dispute over coverage may be resolved in Pitcher's favor without resort to the rule of *contra proferentem* ..., we see no need to rely upon this rule of interpretation. Id. at 418.

In other words, the insurer's position was so unreasonable that it was not even necessary to construe its interpretation against the insurer.

### III. The District Court erred in finding that Reliance Standard's interpretation was reasonable because the vast majority of the cases (all but one) cited below by Reliance Standard do not support its interpretation when examined.

Based upon a review of the Circuits and the case law submitted by Reliance Standard the is not a situation where there are an even number of cases on both sides. Indeed, there a vanishingly few cases that hold that a prior treatment clause excludes coverage when the claimant's doctors did not even suspect the disabling illness during the look-back period. Reliance Standard primarily relied upon the unreported <u>Ferrizzi</u>, *supra*, for the proposition that a specific diagnosis during the pre-existing condition look-back period is not necessary in order for the pre-existing condition exclusion to apply. It is true that the <u>Ferrizzi</u> opinion does include this language. However, for both legal and factual reasons, the <u>Ferrizzi</u> opinion has limited impact on this case.

Legally, it should be noted that the only case law addressed significantly in the <u>Ferrizzi</u> opinion concerns the standard of review. <u>Id</u>. at 684. It does not grapple with any of the case law cited above holding that a pre-existing condition exclusion cannot apply to a medical condition that a doctor is not aware of at the time he is providing treatment, or that treatment for non-specific symptoms cannot trigger a pre-existing

condition.  Apparently the attorneys who argued <u>Ferrizzi</u> failed to inform the Eleventh Circuit panel of how such clauses are normally interpreted.  <u>Ferrizzi</u>, does not address the issues raised in <u>Horneland</u>.

Importantly, <u>Ferrizzi</u> is also factually distinguishable.  On administrative appeal the <u>Ferrizzi</u> plaintiff contended that his disability was the result of substance abuse and dependency.  <u>Id</u>.  However, as the <u>Ferrizzi</u> court noted:

> Ferrizzi received "medical treatment" for substance abuse/drug dependency on at least one occasion during the look-back period:  on December 10, 2014, when Dr. Mendez decided *not* to provide drugs when Ferrizzi presented with "drug seeking behavior."  <u>Id</u>. at 685.

Further, three different entries from Ferrizzi's medical records from November and December 2014—indisputably within the six-month look-back period—documented his "attempts to obtain prescriptions for benzodiazepines from three different doctors on at least three different occasions."  <u>Id</u>. at 686.

The <u>Ferrizzi</u> plaintiff is obviously not a sympathetic individual.  But more importantly, plaintiff's drug dependency was <u>suspected</u> during the look-back period by his doctor.  Again, there is no evidence whatsoever that Johnson's doctors suspected her of having scleroderma during the look-back period and Reliance Standard and the Court below failed to document any.  Further, the symptoms that the plaintiff in <u>Ferrizzi</u> presented with, and the treatment he sought, during the look-back

period were in a tight nexus with the medical condition for which he ultimately claimed disability. Drug seeking behavior is <u>only</u> a symptom of substance abuse. By contrast, the symptoms presented by Johnson during the look-back period—numbness, pain, dizziness, shortness of breath—are non-specific, capable of being caused by any number of conditions.

As noted above, vague or non-specific symptoms during the look-back period, that could be caused by the medical condition for which the claimant ultimately claims benefits but could also be caused by other medical conditions, are insufficient to render the medical condition for which the claimant ultimately claims benefits pre-existing. <u>Ermenc</u>, at 682; <u>Hall</u>, at 912; <u>McLeod</u>, at 626; <u>Ceccanecchio,</u> at 72; <u>App</u> at *8. Again, the plaintiff in <u>Ferrizzi</u> had symptoms which are associated with only one condition and therefore were not non-specific.

In its briefing below, Reliance Standard provided a false impression of the wider body of law by stating that its decision must be reasonable because other Courts have interpreted similar pre-existing conditions in a similar manner, namely that treatment for unsuspected conditions and non-specific symptoms are sufficient to trigger this type of pre-existing clause. However, as explained, <u>Ferrizzi</u> did not interpret the pre-existing clause in this manner nor did the vast majority of the other cases cited by Reliance.

22

Dowdall v. Com. Travelers Mut. Acc. Ass'n of Am., 344 Mass. 71, 181 N.E.2d 594 (1962) involved a pre-manifestation type clause, and the plaintiff's doctor testified that he suspected multiple sclerosis long before the effective date of the policy. Id. at 73. Thus, this case did not involve an "unsuspected" condition. Further, the Dowdall court expressed support for the position that the origin of a disease occurs "when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease." Id. at 74.

Likewise, Doroshow v. Hartford Life & Acc. Ins. Co., 574 F.3d 230 (3rd Cir. 2009) was a case which the treatment during the look-back period was for a highly suspected disease. Id. at 232. In Doroshow, Hartford found that the plaintiff's ALS was pre-existing because during the look-back period he had discussed ALS with his physician due to his symptoms and family history, even though the physician had noted that the plaintiff's condition "[w]as not felt to be ALS." Id. The plaintiff had also undergone testing related to ALS and was referred to an ALS specialist prior to the look-back period. Id. The Third Circuit upheld Hartford's denial of benefits. The court stated that "we do not find generally that ruling out a condition constitutes advice or treatment for that condition." Id. at 235. However, in light of the plaintiff's medical history and his physician's notes regarding ALS, the court found that "a diagnosis of ALS was repeatedly considered." Id. The court found that the case

presented a "suspected condition." Id. at 236. Here, although Johnson was diagnosed with and received treatment during the look-back period for some symptoms that, in hindsight, may appear consistent with scleroderma, there is no evidence that any of her doctors suspected her to be suffering from scleroderma or even considered such this diagnosis until well after the look-back period.

Similarly, Bullwinkel v. New England Mut. Life Ins. Co., 18 F.3d 429, 430 (7th Cir. 1994) involved a suspected condition that was determined to be pre-existing. Id. at 430. There, the plaintiff noticed a lump in her left breast during the look-back period. Id. Her physician made no conclusion whether the cyst was cancerous or benign, but he was "concerned about the possibility of cancer." Id. He referred her to a surgeon for removal and biopsy, telling her: "Let's be safe." Id. After the insurance policy became effective, the plaintiff had the lump removed and tests revealed cancer. Id. Again, Reliance Standard has no evidence that scleroderma was suspected by any of Johnson's doctors during the look-back period. Johnson's lung biopsy was not until over three months after the look-back period. (Doc. 28-3 Pg 896).

Fath v. UNUM Life Ins. Co. of Am., 928 F. Supp. 1147, 1148 (M.D. Fla. 1996), aff'd sub nom. Fath v. Unum Life Ins. Co., 119 F.3d 10 (11th Cir. 1997) is likewise unavailing. In Fath, it is true the District Court did not believe that an exact

24

diagnosis was necessary. However, the Court did not truly examine the term "for." However, the primary reason that the Court denied benefits in <u>Fath</u> was that the claimant appeared to be gaming the system. The Court found that the plaintiff in <u>Fath</u> "attempted to circumvent the policy exclusion by asserting that her chiropractic adjustments ...[during the look-back period] were for general health maintenance" and not symptoms of EDS and fibromyalgia. <u>Id</u>. at 1152. The Court correctly pointed out that the purposes of pre-existing condition clauses is to "prevent fraudulent attempts to receive coverage for <u>known</u>, undisclosed pre-existing conditions." <u>Id</u>. at 1153, citations omitted. Reliance Standard has no evidence undermining Johnson's character and no evidence that Johnson <u>knew</u> she had the disabling disease of scleroderma during the look-back period.

<u>Law v. Aetna Life Ins. Co.</u>, No. 2:13-CV-2267-JHH, 2015 WL 260833, at *4 (N.D. Ala. Jan. 21, 2015) is completely unhelpful. In <u>Law</u>, the plaintiff claimed disability on the basis of lumbar spondylosis. <u>Law</u>, at *4. The Court found that it was "clear that Plaintiff was <u>diagnosed</u> and treated for chronic back pain and 'lumbar derangements,' received diagnostic and treatment services for the condition, and was prescribed pain medication for back pain and back spasms during the look-back period." <u>Id</u>. at *8. (Emphasis supplied). Thus, in <u>Law,</u> the plaintiff was actually diagnosed during the look-back period with the disease for which he claimed

25

disability.  Again Reliance Standard has no such evidence that Johnson's doctors even suspected scleroderma much less diagnosed and treated her for it during the look-back period.  Law, also incorrectly placed the burden of proof entirely on the plaintiff and thus there is likely a reason that it is unpublished.  Id. at *8 ("Simply put, Plaintiff has not met his burden of proving that Aetna's determination that the pre-existing condition provision precludes his claim for benefits is wrong.").

In Marshall v. UNUM Life Ins. Co., 13 F.3d 282 (8th Cir. 1994), the plaintiff was treated during the look-back period for chronic fatigue.  Id. at 283.  Within one year later, she ceased work and claimed chronic fatigue syndrome as a disability.  Id. Unlike in our case, plaintiff's symptoms during the look-back period were identical to her ultimate disease.  Moreover, plaintiff's illness was highly suspected during the look-back period as her own doctor examined the criteria for the disease she was later diagnosed with during the look-back period.   Id. at 284.

Even the case cited by Reliance Standard at the hearing of this matter does not support its position.   Williams v. United of Omaha Life Ins. Co., No. 8:20-CV-1001-JSM-AEP, 2021 WL 1648526, at *3 (M.D. Fla. Apr. 12, 2021) (Doc 47).  In Williams, the plaintiff became disabled as a result of a stroke occurring after the look-back period.  Id. at *8.  Prior to the look-back period, Williams had a lengthy history of heart conditions.  Id. at *4.  During the look-back  period, Williams was

followed for the <u>known</u> medical conditions of mitral valve stenosis and high risk pregnancy. <u>Id</u>. at *5. She received treatment (medications) and testing (serial echocardiograms) for the same. <u>Id</u>. at *5-6. The record (both Williams' doctors and the insurer's) established that the mitral valve stenosis and high risk pregnancy were the cause of Williams' disabling stroke. <u>Id</u>. at *7-8. The court then found that as the conditions mitral valve stenosis and high risk pregnancy were both known and treated during the look-back period and caused her subsequent disability, the disability was properly subject to the pre-existing condition exclusion. <u>Id</u>. at 14-15. Here, no one diagnosed or even suspected Johnson as having scleroderma during the look-back period. Johnson underwent no testing for scleroderma during the look-back period. Johnson was prescribed no medications for scleroderma during the look-back period. Moreover, there are no allegations that any of Johnson's known conditions (Raynaud's, Interstitial Lung Disease, fibromyalgia) somehow caused scleroderma. <u>Williams</u> is simply not factually analogous to the case at bar.

Moreover, legally, <u>Williams</u> does not stand for the proposition that the existence of non-specific symptoms during the look-back period render the later-diagnosed condition pre-existing. In fact, the <u>Williams</u> court cited favorably <u>McLeod</u>, *supra* and <u>Pitcher</u>*, supra* (cases relied upon by Johnson) for precisely the opposite proposition:

> Similarly, her pre-existing conditions could not be classified as latent, undiagnosed, or unappreciated conditions.... Cf. McLeod v. Hartford Life and Acc. Ins. Co., 372 F.3d 618, 620 (3d Cir. 2004)...; Pritcher, [sic] 93 F. 3d at 411-17. Williams, at *15.

The only case cited by Reliance Standard in the Court below that actually supported its interpretation of the policy was a 1972 Texas state law case – Mutual Life Insurance Company of New York v. Bohannon, 488 S.W.2d 476, 477-78 (Tex.Civ.App.1972). There, the Texas appellate court reversed summary judgment for the plaintiff finding that pre-effective coverage date treatment for anemia could constitute treatment for a pre-existing condition even though there was a mis-diagnosis of the underlying condition of blind loop syndrome. Id. This fifty year old Texas law case is not reflective of the current state of ERISA's federal common law, nor does it render Reliance's decision reasonable.

## IV.    The District Court erred by finding that the conflict of interest was unremarkable.

Although it is not necessary to reach this step, the District Court erred in finding that the conflict was unremarkable. Specifically, the Court found that it was of no consequence that Reliance Standard never actually stated which symptoms during the look-back period it contended were specifically associated with scleroderma. Reliance Standard simply listed all of Johnson's symptoms including symptoms like anxiety, which cannot reasonably be linked to a later diagnosis of

scleroderma. (Doc 28 Pg 109-10) (Doc 28 Pg 115-119). Indeed, the District Court made the exact same error when it stated that "the problems for which she received medication and medical treatment during the look-back period were all attributable to scleroderma" in the face of symptoms which have nothing to do with scleroderma. (Doc 40 Pg 13) (emphasis added). This failure to specify which symptoms actually relate to scleroderma or even mention scleroderma in the final letter demonstrates that Reliance Standard did not undertake a deliberate and principled reasoning process.

Finally, Reliance Standard breached the ERISA regulations by relying on the wrong type of reviewing doctor, one without appropriate the medical expertise to render an opinion here. 29 C.F.R. § 2560.503-1(h)(3)(v). Dr. Cooper's resume reveals experience with the endocrine disorders such as diabetes, but does not indicate familiarity with rare rheumatological disorders like scleroderma. (Doc 28-3 Pg 931-37). Reliance Standard did not argue that Dr. Cooper, an endocrinologist, was qualified. Instead, Reliance Standard suggested that these regulations can be disregarded, citing Dutkewych v. Standard Ins. Co., No. 12-CV-11073, 2014 WL 1334169, at *7 (D. Mass. Mar. 29, 2014). However, Dutkewych does not stand for this. In Dutlewych, the plaintiff had Lyme disease, and the court found that Standard's reviewing doctors had specific experience with Lyme disease. Id. at *8. A non-conflicted administrator would have hired the appropriate specialist.

## **CONCLUSION**

For the above reasons, Johnson respectfully requests that this Court reverse the District Court's grant of judgment to Reliance Standard and remand this case to the District Court with instructions to find that the pre-existing exclusion does not bar coverage, to grant benefits up to at least May 15, 2018 and to remand the case back to Reliance Standard to determine disability after that date.  Johnson also requests interest at an appropriate rate and attorney's fees, both on appeal and before the District Court.

Respectfully submitted this ___ day of March, 2024.

_____

Rogers, Hofrichter & Karrh, LLC
225 S. Glynn Street, Suite A
Fayetteville, GA 30214
(770) 460-1118
hkarrh@rhkpc.com

Heather K. Karrh
Ga. State Bar No. 408379

Attorney for Appellant

30

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6967 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of the Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect X4, 14 point, Times New Roman.

_____

Attorney for Appellant Cheriese D. Johnson

Dated: _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system and the attorney listed below is a registered user of the electronic filing system. Moreover an original and six copies were hand filed with the court and one paper copy was sent to the below attorney via U.S. Mail.

Parks K. Stone
Wilson Elser Moskowitz Edelman & Dicker, LLP
3348 Peachtree Road, N.E., Suite 1400
Atlanta, GA 30326

Joshua Bachrach
Wilson Elser Moskowitz Edelman & Dicker, LLP
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103

Respectfully submitted this _____ day of March, 2024.


_____
Heather K. Karrh
Ga. State Bar No. 408379

Attorney for Appellant

Rogers, Hofrichter & Karrh, LLC
225 S. Glynn Street, Suite A
Fayetteville, GA 30214
(770) 460-1118
hkarrh@rhkpc.com