# In the United States Court of Appeals
## for the Eleventh Circuit

CHERIESE D. JOHNSON,
Plaintiff-Appellant,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,
Defendant-Appellee,

THE WILLIAM CARTER COMPANY GROUP
LONG TERM DISABILITY INSURANCE PLAN,
Defendant.

On appeal from an Order and Opinion Granting Defendant's Motion
for Summary Judgment, and Entering Judgment in Favor of Defendant,
in the United States District Court for the Northern District of Georgia
1:21-cv-02900-SDG, Steven D. Grimberg, U.S. District Judge

**RESPONDING BRIEF FOR DEFENDANT-APPELLEE
RELIANCE STANDARD LIFE INSURANCE COMPANY**

| | |
|---|---|
| **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP** | **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP** |
| Parks K. Stone, Esquire | Joshua Bachrach, Esquire |
| parks.stone@wilsonelser.com | joshua.bachrach@wilsonelser.com |
| 3348 Peachtree Road NE, Suite 1400 | 2001 Market Street, Suite 3100 |
| Atlanta, GA 30326 | Philadelphia, PA 19103 |
| 470-419-6650 (T) | 215 606-3906 (T) |
| 470-419-6651 (F) | 215 627-2665 (F) |

*Counsel for Defendant-Appellee
Reliance Standard Life Insurance Company*

Appeal Number: 23-13443-A
Case Style: Cheriese Johnson v. Reliance Standard Life Insurance Company
District Court Docket No: 1:21-cv-02900-SDG

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellee Reliance Standard Life Insurance Company certifies that the following

persons and entities have an interest in the outcome of this appeal:

- Bachrach, Joshua, Attorney for Defendant-Appellee

- Grimberg, Steven D., District Judge, U.S. District Court, N.D. Georgia

- Johnson, Cheriese, Plaintiff-Appellant

- Karrh, Heather K., Attorneys for Plaintiff-Appellant

- Reliance Standard Insurance Company, Defendant-Appellee

- Rogers, Hofrichter & Karrh, LLC, Attorneys for Plaintiff-Appellant

- Tokio Marine Holdings, Inc., Parent Corporation of Defendant-Appellee

- Stone, Parks K., Attorney for Defendant-Appellee

- Wilson Elser Moskowitz Edelman & Dicker LLP, Attorneys for Defendant-Appellee

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP**

By:   /s/ Joshua Bachrach
      Joshua Bachrach, Esquire
      Two Commerce Square
      2001 Market Street, Suite 3100
      Philadelphia, PA 19103
      215.606.3906 p./215.627.2665 f.
      joshua.bachrach@wilsonelser.com

      Parks Stone, Esquire
      3348 Peachtree Road NE, Suite 1400
      Atlanta, GA 30326
      470.419.6650 p./470.419.6651 f.
      parks.stone@wilsonelser.com

      *Attorneys for Defendant/Appellee*
      *Reliance Standard Life Insurance*
      *Company*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Reliance Standard Life Insurance Company ("Reliance Standard") respectfully submits that the issues presented in this appeal are straightforward and have previously been addressed by this Court. Accordingly, Reliance Standard does not believe that oral argument would be of assistance to the Court's decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ............................................. C-1 of 2

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF CITATIONS .......................................................................... iv

INTRODUCTION ................................................................................... 1

COUNTER-STATEMENT OF THE ISSUE ON APPEAL ..................................... 4

COUNTER-STATEMENT OF THE CASE ........................................................ 4

I.    Relevant Factual Background ......................................................... 4

    A.    The LTD Policy ................................................................... 4

    B.    Johnson's Claim for LTD Benefits ......................................... 6

    C.    The Administrative Appeal ................................................... 11

II.    Procedural History of the Case ..................................................... 13

SUMMARY OF ARGUMENT ................................................................... 17

ARGUMENT ...................................................................................... 19

I.    ERISA Standard of Review. ......................................................... 19

II.    The District Court Correctly Held that Reliance Standard Reasonably
Denied Johnson's Claim for Long Term Disability Benefits Based on
the Pre-existing Conditions Limitation in the LTD Policy. ................... 23

    A.    The Plain Language of the Pre-existing Conditions Limitation in
the LTD Policy Does Not Condition Applicability on a
Diagnosis. ...................................................................... 27

B.      Johnson Received Medical Treatment, Consultation, and Medication for Her "Sickness" During the Look Back Period. ......... 29

C.      Reliance Standard's Interpretation and Application of the Pre-existing Conditions Limitation in the LTD Policy is Supported by Decisions in Addition to *Ferrizzi*. .................................................. 32

III.    The District Court Properly Held That Johnson Failed to Establish That the Denial of Benefits was Otherwise Tainted By a Conflict of Interest. ................................................................................................ 41

CONCLUSION ...................................................................................... 43

CERTIFICATE OF COMPLIANCE ....................................................... 45

CERTIFICATE OF SERVICE ................................................................ 46

# TABLE OF CITATIONS

**Cases**

*Alexandra H. v. Oxford Health Ins., Inc.*,
    833 F.3d 1299 (11th Cir. 2016) ................................................... 21, 25

*App v. Aetna Life Ins. Co.*,
    2009 WL 2475020 (M.D. Pa. 2009) ............................................ 39, 40

*Blankenship v. Metro. Life Ins. Co.*,
    644 F.3d 1350 (11th Cir. 2011) ............................................. 20, 21, 22

*Brannon v. BellSouth Telecomm., Inc.*,
    318 Fed. Appx. 767 (11th Cir. 2009) ................................................21

*Bullwinkel v. New England Mutual Life Insurance Co.*,
    18 F.3d 429 (7th Cir. 1994) ...................................................... 32, 33

*Capone v. Aetna Life Ins. Co.*,
    592 F.3d 1189 (11th Cir. 2010) .....................................................20

*Carter v. Galloway*,
    352 F.3d 1346 (11th Cir. 2003) .....................................................19

*Ceccanecchio v. Continental Cas. Co.*,
    50 Fed. Appx. 66 (3d Cir. 2002) ...................................................39

*Conkright v. Frommert*,
    559 U.S. 506, 130 S. Ct. 1640 (2010) ............................................32

*\*Doyle v. Liberty Life Assurance Co. of Bos.*,
    542 F.3d 1352 (11th Cir. 2008) ...................................... 22, 23, 39, 42

*Ermenc v. American Family Mutual Ins. Co.*,
    221 Wis.2d 474, 585 N.W.2d 679 (Wis. 1998) ...............................40

*Est. of Schwing v. The Lilly Health Plan*,
    562 F.3d 522 (3d Cir. 2009). .......................................................39

*Fath v. Unum Life Ins. Co. of Am.*,
    928 F. Supp. 1147 (M.D. Fla. 1996), *aff'd sub nom*,
    *Fath v. Unum Life Ins. Co.*, 119 F.3d 10 (11th Cir. 1997) ............................ 33, 34

*\*Ferrizzi v. Reliance Standard Life Ins. Co.*,
    792 Fed. Appx. 678 (11th Cir. 2019)...............2, 13, 14, 15, 18, 23-28, 32, 42, 43

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)..................................................................................... 20, 21

*Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama*,
    41 F.3d 1476 (11th Cir. 1995) ................................................................40

*Glazer v. Reliance Standard Life Ins. Co.*,
    524 F.3d 1241 (11th Cir. 2008) ..........................................................20

*Griffis v. Delta Family-Care Disability*,
    723 F.2d 822 (11th Cir. 1984) .............................................................22

*Hall v. Continental Cas. Co.*,
    207 F. Supp. 2d 903 (W.D. Wis. 2002) .................................................40

*Horneland v. United of Omaha Ins. Co.*,
    717 Fed. Appx. 846 (11th Cir. Nov. 17, 2017)........................................... 37, 38

*Hughes v. Bos. Mut. Life Ins. Co.*,
    26 F.3d 264 (1st Cir. 1994).......................................................... 36, 37

*Hunt v. Hawthorne Assocs., Inc.*,
    119 F.3d 888 (11th Cir. 1997) .............................................................21

*Jett v. Blue Cross & Blue Shield of Ala., Inc.*,
    890 F.2d 1137 (11th Cir. 1989) ................................................ 21, 22

*Larsen v. Prudential Ins. Co. of Am.*,
    151 F. Supp. 2d 167 (D. Conn. 2001)....................................................36

*Law v. Aetna Life Ins. Co.*,
    No. 2:13-cv-2267-JHH, 2015 U.S. Dist. LEXIS 6404
    (N.D. Ala. Jan. 21, 2015).............................................................. 34, 35

*Lawson v. Fortis Ins. Co.*,
    301 F.3d 159 (3d Cir. 2002) ................................................................40

*Loza v. American Heritage Life Ins. Co.*,
    No. CV-09-1118-PHX-DSV, 2012 U.S. Dist. LEXIS 40438 (D. Ariz. 2012),
    *aff'd* 568 Fed. Appx. 530 (9th Cir. 2014) .............................................36

*Marshall v. UNUM Life Insurance Co.*,
    13 F.3d 282 (8th Cir. 1994) ................................................................33

*McLeod v. Hartford*,
    372 F.3d 618 (3d Cir. 2004) ......................................................... 38, 39

*Metro Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008) .................................................................... 22, 39

*Mitzel v. Anthem Life Ins. Co.*,
    351 Fed. Appx. 74 (6th Cir. 2009) ......................................................39

*Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*,
    320 F.3d 1260 (11th Cir. 2003) ..........................................................19

*Pitcher v. Principal Mut. Life Ins. Co.*,
    93 F.3d 407 (7th Cir. 1996) ................................................................39

*Tippett v. Reliance Standard Life Ins. Co.*,
    457 F.3d 1227 (11th Cir. 2006) ..........................................................20

*Turner v. Delta Family-Care Disability and Survivorship Plan*,
    291 F.3d 1270 (11th Cir. 1984) ..........................................................22

*White v. Coca-Cola Co.*,
    542 F.3d 848 (11th Cir. 2008) ............................................................22

*Williams v. United of Omaha Life Ins. Co.*,
    No. 8:20-CV-1001-JSM-AEP, 2012 U.S. Dist. LEXIS 72002 (M.D. Fla.
    April 12, 2021) ..................................................................... 35, 36

**Rules**

11th Cir. R. 28-5 ...................................................................................................4

**Other Authorities**

https://my.clevelandclinic.org/health/diseases/8979-scleroderma-an-overview;
https://www.mayoclinic.org/diseases-conditions/scleroderma/symptoms-
causes/syc-20351952 ...................................................................................8

https://my.clevelandclinic.org/health/diseases/8979-scleroderma#management-
and-treatment ...............................................................................................8

https://my.clevelandclinic.org/health/diseases/17809-interstitial-lung-disease. .......8

*Authorities primarily relied upon

# **INTRODUCTION**

Plaintiff-Appellant Cheriese Johnson ("Johnson") submitted a claim for long term disability ("LTD") benefits under an employee welfare benefit plan governed by ERISA. Reliance Standard is the insurer of the plan and serves as the claim administrator. Since Johnson stopped working and claimed disability within one year of becoming insured under the LTD policy, Reliance Standard conducted an inquiry to determine whether her claim was barred by the Pre-existing Conditions Limitation (the "Limitation") in the LTD Policy. Under this Limitation, benefits are not payable for a disability that is caused by, contributed to by or results from a "Pre-Existing Condition." Determining that Johnson had received treatment, medication and consultation for symptoms of the condition upon which her disability claim is based within the three-month period prior to her effective date of coverage (known as the "look back period"), Reliance Standard denied her claim. Applying the comprehensive framework developed by the Eleventh Circuit for reviewing a claim administrator's decision under ERISA, the district court upheld Reliance Standard's denial.

Johnson does not dispute that her claim is based on at least some of the symptoms she treated for during the look back period. However, she contends that the applicability of the Limitation is constrained by an actual diagnosis during the look back period. This is contrary to the express terms of the LTD Policy and the

manner in which the Eleventh Circuit has interpreted this same Limitation in the past.

In *Ferrizzi v. Reliance Standard Life Ins. Co*., 792 Fed. Appx. 678, 686 (11th Cir. 2019), this Court upheld the denial of benefits, stating that "[t]he Reliance policy exclusion does not require a formal diagnosis during the lookback period." Since Johnson received treatment, medication and consultation for hallmark symptoms of scleroderma and conditions associated with it during the look back period, Reliance Standard reasonably concluded that the Limitation applied – and the district court agreed. To determine otherwise would make coverage solely dependent upon the timing of a diagnosis while completely ignoring the language of the policy itself.

The secondary dispute in this case is whether Reliance Standard's structural conflict of interest tainted its denial of Johnson's claim to such an extent as to render it arbitrary and capricious despite being reasonable. As Reliance Standard's denial of the claim was entirely consistent with its own claims procedures, the language of the LTD Policy, and Eleventh Circuit case law (*Ferrizzi*), the district court properly determined that Johnson had failed to establish that Reliance Standard's denial of her claim was arbitrary or capricious.

As discussed herein, because this Court has previously held that a diagnosis is not a requirement for the Pre-existing Conditions Limitation to apply, the district court correctly found that Reliance Standard not only had a reasonable basis for its

denial, but that its denial was not otherwise arbitrary and capricious. Johnson has not established otherwise in her brief. Therefore, the Judgment in favor of Reliance Standard should be affirmed.

# COUNTER-STATEMENT OF THE ISSUE ON APPEAL

I.    Whether the district court properly held that Reliance Standard's denial of Johnson's claim for long term disability benefits on the ground that it was barred by the Pre-existing Conditions Limitation in the policy was reasonable where the applicability of the Limitation is not conditioned on a diagnosis, where she had received treatment, medication and consultation for the symptoms of her disabling condition during the three-month look back period, and where Eleventh Circuit case law supports the denial.

*Suggested Answer:*  Yes.

# COUNTER-STATEMENT OF THE CASE

## I.    Relevant Factual Background

### A.    The LTD Policy

Johnson began her employment with the William Carter Company as a Senior HR Business Solutions Analyst on July 14, 2016. (Doc. 28, pp. 84, 99) (AR84, AR130).[1] Reliance Standard is the insurer of Group Long Term Disability benefits under the William Carter Company Long Term Disability Plan pursuant to the terms

---

[1] References to the record are to the lower court's document number and page number as required by 11th Cir. R. 28-5. For the sake of clarity, Reliance Standard is also including the Administrative Record (AR) page numbers where applicable. The Administrative Record was filed in the district court at Doc. No. 28.

of LTD Policy No. LTD 106119 ("LTD Policy"). Johnson became insured under the

LTD Policy on October 12, 2016.  (Doc. 28, p. 53) (AR84).

The LTD Policy contains a Pre-existing Conditions Limitation which states:

> Benefits will not be paid for a Total Disability:
> (1) caused by;
> (2) contributed to by; or
> (3) resulting from
> a Pre-existing Condition unless the Insured has been Actively at Work for one (1) full day following the end of twelve (12) consecutive months from the date he/she became Insured.

(Doc. 28-4, p. 22) (AR22). For purposes of the Limitation, "Pre-Existing

Conditions" are defined in the LTD Policy to mean "any Sickness or Injury for which

the Insured received medical Treatment, consultation, care or services, including

diagnostic procedures, or took prescribed drugs or medicines, during the three (3)

months immediately prior to the Insured's effective date of insurance".[2] (Doc. 28-4,

p. 23) (AR23). Thus, the Pre-existing Conditions Limitation in the LTD Policy

applies where a participant has been insured under the policy for less than one year

before submitting a claim *and* the condition on which the claim is based meets the

definition of a "pre-existing condition". Most relevant to this lawsuit, neither the

Limitation nor the definition of "pre-existing condition" require a diagnosis to be

applicable.

---

[2] This period is commonly referred to as the "look back period".

**B.    Johnson's Claim for LTD Benefits**

Again, Johnson became insured under the Reliance Standard LTD Policy on October 12, 2016. As such, the look back period for the Limitation ran from July 12 through October 12, 2016.  (Doc. 28, p. 53; Doc. 28-4, p. 23) (AR 23, AR84). Johnson stopped working on a full-time basis on January 26, 2017, and stopped working altogether in April 2017. (Doc. 28, pp. 54, 99) (AR85, AR130).

In October 2017, Johnson submitted a claim for LTD benefits identifying her symptoms as "coughing & painful hands & feet", which she first noticed on December 31, 2015, and for which she first sought treatment for in January 2016. (Doc. 28, p. 99) (AR130). On the "Physician's Statement" accompanying Johnson's claim, her rheumatologist, Roel Querubin, M.D., identified her "primary diagnosis" as "scleroderma" with symptoms that included "joint pain, swelling, shortness of breath" and objective findings of "finger swelling". (Doc. 28, p. 104) (AR135). Dr. Querubin also identified "interstitial pneumonitis" as a secondary diagnosis contributing to Johnson's disability. (Doc. 28, p. 104) (AR135). According to Dr. Querubin, Plaintiff's symptoms first appeared in October 2015, and she visited him for treatment every one to three months from April 25, 2016 through October 4, 2017.  (Doc. 28, p. 104) (AR135). Reliance Standard confirmed receipt of Johnson's claim for LTD benefits on October 18, 2017. (Doc. 28, p. 70) (AR101).

It is undisputed that Johnson claimed LTD benefits within one year of her effective date of coverage under the LTD Policy. Reliance Standard's LTD policy dictates that it will conduct a pre-existing condition inquiry when a claim is made within one year of an insured's effective date of coverage to determine whether the claim falls within the definition of a "pre-existing condition" in the LTD Policy. (Doc. 28-4, pp. 22-23) (AR22-23). Here, while not disputing that Johnson was not *diagnosed* with scleroderma until after she stopped working, Reliance Standard looked to whether Johnson received "medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines" for symptoms related to scleroderma between July 12 and October 12, 2016, "the three (3) months immediately prior to [her] effective date of insurance". (Doc. 28-4, p. 23) (AR23). In this regard, Reliance Standard sent to Johnson a letter on July 21, 2017, explaining the Limitation and the purposes of the investigation, and requesting that she complete a "Pre-existing Condition Questionnaire", which she returned on or about October 3, 2017. (Doc. 28, pp. 89-92) (AR120-AR123). In her response, Johnson identified all medical providers who had rendered treatment to her between the dates during the look back period. (Doc. 28, pp. 89-92) (AR120-AR123).

Johnson's rheumatologist identified a primary diagnosis of scleroderma and a secondary condition of interstitial pneumonitis as contributing to her disability. Scleroderma is an auto-immune disorder, whose symptoms include: joint pain and

stiffness; numbness and swelling in hands and feet; Raynaud's phenomenon (discoloration in fingers or toes in response to cold or emotional distress); persistent cough and shortness of breath; digestive and gastrointestinal problems; heartburn and difficulty swallowing; and fatigue.[3] Treatment for scleroderma focuses on the treatment and management of the symptoms of scleroderma and associated conditions.[4] One related condition is interstitial lung disease, which refers to "a group of conditions that cause inflammation and scarring in [the] lungs", the symptoms of which can include shortness of breath and a dry cough and which can cause irreversible lung damage.[5]

During the three-month look back period, Johnson was treated and/or consulted as follows for scleroderma and related conditions:

- August 15, 2016: evaluated by Ashleigh Clark, FNP-C, for complaints of fatigue, muscle weakness, nausea and vomiting. (Document 28-2, pp. 137-138) (AR769-770).

- August 23, 2016: underwent an upper gastrointestinal endoscopy. (Doc. 28-2, pp. 195-196) (AR827-828).

- September 6, 2016: evaluated by Ashleigh Clark, FNP-C, for complaints of "nausea/vomiting" as well as "nose bleeds, memory loss, body aches, and joint swelling". The

---

[3] https://my.clevelandclinic.org/health/diseases/8979-scleroderma-an-overview; https://www.mayoclinic.org/diseases-conditions/scleroderma/symptoms-causes/syc-20351952.

[4] https://my.clevelandclinic.org/health/diseases/8979-scleroderma#management-and-treatment.

[5] https://my.clevelandclinic.org/health/diseases/17809-interstitial-lung-disease.

assessments following that evaluation included edema, GERD, and epistaxis, among other things (Doc. 28-2, pp. 139-140) (AR771-AR772).

- September 13, 2016: evaluated by Binu George, M.D. , who described Johnson as having "decreased breath sounds [bilaterally]" and diagnosed her with "chronic bronchitis", fatigue, GERD, and obstructive sleep apnea (Doc. 28-2, pp. 141-142) (AR773-AR774).

- September 30, 2016: evaluated by Alan Maloon, M.D., who described Johnson's complaints as numbness and pain in the distal extremities, hot and cold sensitivity, coordination difficulty and problems dropping things, and intermittent left knee numbness. Other symptoms included "vomiting, skin rash, chest pain, headaches, forgetfulness and cognitive impairment, fatigue, inability to control bowels, blurred visions, fever, low blood sugar, nausea, loss of appetite, syncope, dizziness, generalized aching, swelling of feet and hands, loss of motor skills and nosebleeds". Dr. Maloon also noted: "Color change in pain fingers and toes with cold exposure". (Doc. 28, pp. 185-187) (AR216-AR218).

Additionally, during the three-month look back period, Johnson was prescribed several medications including:

- 7/25/16, 8/28/16, 10/1/16: Hydrochlorothiazide (treats edema)

- 7/28/16, 10/3/16: Diclofenac Sodium (NSAID and anti-inflammatory drug)

- 8/4/16: Omeprazole (treats GERD)

- 8/15/16: Cyclobenzaprine (muscle relaxer)

- 8/19/16, 9/19/16: Meclizine (treats motion sickness and vertigo)

- 9/8/16: Sucralfate (treats acid reflux)

- 9/8/16: Pantoprazole Sodium (treats GERD)

(Doc. 28, p. 78; Doc. 28-2, pp. 82, 84, 86, 88-89) (AR109, AR714, AR716, AR718, AR720-AR721).

Based on the above-described records which include treatment, diagnostic procedures and medications during the look back period to treat various symptoms and conditions of scleroderma, including interstitial lung disease (which ultimately caused Johnson to submit her disability claim), Reliance Standard concluded that benefits are not payable based on the Limitation. (Doc. 28, pp. 77-80) (AR107-AR111).

On January 4, 2018, Reliance Standard sent Johnson a letter denying her claim for LTD benefits. In it, Reliance Standard explained:

> Our medical department reviewed all available medical data and confirm that you went out of work due to pain and numbness in all four extremities, joint swelling, motor loss, cough, and cognitive impairment. What appears to have initially caused you to stop working at the date of loss and ongoing is persistent hand pain and swelling, problems with short-term memory and cognitive, Raynaud type symptoms, and chronic pain. You reported symptoms of and received treatment for: nausea, vomiting, cough, fatigue, GERD, hypertension, muscle weakness, swelling of feet and hands, body aches, and a loss of motor skills during the pre-existing time period of 7/12/2016 to 10/12/2016. These noted symptoms contributed to and resulted in your impairing conditions: Raynaud's, Interstitial Lung Disease, paresthesias, Fibromyalgia, and chronic pain, of which are considered to be pre-existing diagnoses.

(Doc. 28, pp. 78-79) (AR109-AR110).

In the January 4, 2018 correspondence, Reliance Standard advised Johnson of her right to an administrative review and the procedure for requesting such a review. (Doc. 28, pp. 79-80) (AR110-AR111).

## C. The Administrative Appeal

On February 23, 2018, Johnson timely requested an administrative review of the January 4, 2018 denial of benefits. (Doc. 28-3, p. 87) (AR921). In the appeal, Plaintiff argued that because scleroderma was not diagnosed as the cause of her symptoms until a lung biopsy was performed in March 2017, "this is not a Pre-existing condition." (Doc. 28-3, p. 87) (AR921).

During the administrative review, Reliance Standard referred Johnson's records for an Independent Peer Review conducted by Robert J. Cooper, M.D., Board Certified in Internal Medicine and Endocrinology. (Doc. 28, p. 84) (AR115). Dr. Cooper agreed that "[t]he symptoms/findings do support a reported diagnosis of scleroderma…." (Doc. 28-3, p. 108) (AR942). When asked if he was able to determine if Johnson's impairment at the date she stopped working was "caused by, contributed to by or related to a condition for which [she] received consultation, medical care, treatment and/or diagnostic procedure during the time period of 7/12/2016-10/12/2016", Dr. Cooper opined that Johnson "received treatment for cough/asthma on 09/13/2016 by Dr. Binu and by Ms. Clark on 09/06/2016" and

"saw Alan Maloon, M.D., neurosurgery, for complaints of cognitive impairment, numbness and pain in the extremities, on 09/30/2016". (Doc. 28-3, p. 108) (AR942).

Based on its administrative review, which included Dr. Cooper's Independent Peer Review, Reliance Standard upheld the denial of benefits based on the Policy's Limitation on July 18, 2018. (Doc. 28, pp. 84-88) (AR115-119). Reliance Standard noted that the records revealed that Johnson had undergone treatment and diagnostic procedures and was assessed with fatigue, muscle weakness, nausea with vomiting (unspecified), helicobacter pylori, epistaxis, gastro-esophageal reflux disease without esophagitis, edema (unspecified), hypertension, mucopurulent chronic bronchitis, and obstructive sleep apnea during the three-month look back period. (Doc. 28, pp. 85-86) (AR 116-AR117). Reliance Standard also noted that Johnson had been prescribed various medications for these symptoms/conditions during the three-month look back period. (Doc. 28, p. 86) (AR117). And Reliance Standard further noted that Johnson, herself, had complained of "numbness, coldness, and pain intermittent on four extremities distal." (Doc. 28, p. 86) (AR117). Reliance Standard stated that "[i]n concluding our review, we have determined that you did in fact receive[] medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines for symptoms related to asthma, lung disease, cognitive functions, numbness and pain in your extremities during the *Pre-existing Condition* period of July 12, 2016 to October 12, 2016", as

confirmed by Dr. Cooper. (Doc. 28, p. 87) (AR118). Again, these are hallmark symptoms of scleroderma.

## II.   <u>Procedural History of the Case</u>

Johnson instituted this ERISA lawsuit against Reliance Standard by filing a Complaint in the United States District Court for the Northern District of Georgia on July 19, 2021. (Doc. 1). Reliance Standard filed its Answer to the Complaint with Separate Defenses on January 4, 2022. (Doc. 7). On December 22, 2022, Johnson filed a Motion for Judgment on the Administrative Record, and Reliance Standard filed a Motion for Summary Judgment. (Docs. 26-27).[6]  In her motion, Johnson argued that she was totally disabled due to scleroderma, and since she was not diagnosed with scleroderma until after the three-month look back period, and the treatment she did receive during the look back period was for symptoms "that could be related to any number of conditions beyond scleroderma", the Pre-existing Conditions Limitation did not apply. (Doc. 26-1, pp. 15-16). Reliance Standard argued that the applicability of the Limitation in the LTD Policy, as it is written, is not dependent upon a specific diagnosis. Per the Eleventh Circuit's decision in *Ferrizzi v. Reliance Standard Life Ins. Co.*, 792 Fed. Appx. 678 (11 Cir. 2019), and

---

[6] Although the two different types of motions filed by the parties are generally governed by different standards, the district court noted that "[b]ecause the parties largely agree on the facts and do not contest the accuracy of the administrative record, the difference between these two standards does not substantially affect the Court's analysis here." (Doc. 40, p. 7).

decisions both before and after *Ferrizzi*, the Limitation does not require a formal diagnosis during the look back period to apply. (Doc. 27-1, p. 2).

After the parties filed their respective oppositions in January 2023 (Doc. 29, 32-35), and after conducting a hearing on August 31, 2023 (Doc. 47), the district court issued its Order and Opinion on September 29, 2023, denying Johnson's Motion for Judgment on the Administrative Record, granting Reliance Standard's Motion for Summary Judgment and entering judgment in favor of Reliance Standard. (Doc. 40). The Clerk's Judgment in favor of Reliance Standard was issued on the same date. (Doc. 41).

In its September 29, 2023 Order and Opinion, the district court recognized that the disagreement between the parties focused on "whether Johnson's treatment for a variety of symptoms during the Look-Back Period – without a diagnosis of the cause of those symptoms – makes her claim for benefits subject to" the Pre-existing Conditions Limitation in the LTD Policy. (Doc. 40, p. 7). Recognizing that the LTD Policy granted Reliance Standard discretionary authority to interpret the terms and to make eligibility determinations (Doc. 40, p. 8), the district court began its analysis by considering whether Reliance Standard's decision, even if *de novo* wrong, was nevertheless reasonable based on the information before it. (Doc. 40, pp. 8-9). In that regard, the district court considered whether Reliance Standard had a rational and good faith basis for denying Johnson's claim based on the Limitation. Following

the Eleventh Circuit's rationale in *Ferrizzi, supra.*, which addressed the same contract language as this case, the district court stated:

> Applying standard contract interpretation rules, as the Court of Appeals did in *Ferrizzi*, leads this Court to the inescapable conclusion that Reliance Standard's benefits determination was supported by reasonable grounds. *The Exclusion does not require that a diagnosis have been made for it to apply*; it only required that Johnson have been treated or received consultation during the Look-Back Period for the Sickness that caused her total disability. *Johnson plainly received treatment, consulted with physicians, and was prescribed medication for her ailments during the Look-Back Period.*
>
> * * *
>
> The parties agree that scleroderma rendered Johnson disabled. *The problems for which she received medication and medical treatment during the Look-Back Period were all attributable to scleroderma – even though she had not yet been diagnosed with it.* Moreover, the problems for which Johnson was treatment during the Look-Back period certainly fall within the definition of "illness," which makes them a Sickness under the Plan.

(Doc. 40, pp. 12-13) (emphasis added).

Finding that Reliance Standard's coverage determination is reasonable and acknowledging that the parties agreed that Reliance Standard operated under a structural conflict of interest, the district court then considered whether Johnson had met her burden of establishing that Reliance Standard's structural conflict of interest tainted its decision on this claim, thus rendering it arbitrary and capricious. (Doc. 40, p. 14). The district court answered that question no:

15

Finally, Johnson argues that Reliance Standard's decision was tainted by the conflict because the denial letters do not mention scleroderma. *Given the Exclusion's reliance on Treatment – rather than diagnosis – during the Look-Back Period*, this is weak evidence at best that Reliance Standard "did not undertake a deliberate and principled reasoning process."

Even taking all of Johnson's arguments together, Reliance Standard's decision was neither arbitrary nor capricious when it was entirely consistent with an Eleventh Circuit case interpreting the exact same policy language. The Court empathizes with Johnson's situation. She suffers from a disabling and extremely painful terminal condition. But Johnson's genuine need for coverage cannot render meaningless the legal standards the Court must apply. Johnson has not demonstrated that Reliance Standard's decision to deny her benefits was arbitrary and capricious.

(Doc. 40, p. 15) (emphasis added; internal citation omitted).

This appeal followed. (Doc. 42). As will be discussed below, Johnson makes the same argument in her brief that she did before the district court, namely that the Pre-existing Conditions Limitation in the LTD Policy cannot apply absent a correct underlying *diagnosis* for the symptoms for which she received treatment, medication and consultation during the look back period. For the same reasons that this argument was rejected by the district court, it must be rejected here.

# SUMMARY OF ARGUMENT

Johnson submitted her claim for LTD benefits based on a primary diagnosis of scleroderma with related symptoms that included coughing, pain in her hands and feet, joint pain, swelling (include finger swelling), and shortness of breath which she first noticed as early as December 31, 2015, and for which she sought treatment beginning the next month. Since Johnson's claimed disability occurred within twelve months of her effective date of coverage under the LTD Policy, Reliance Standard properly conducted a pre-existing condition investigation. As a result of that investigation, Reliance Standard determined that Johnson had, in fact, received treatment, consultation and medication for conditions and symptoms during the three-month look back period that even she and her own doctors attribute to her later diagnosed scleroderma. Therefore, Reliance Standard denied the claim based on the Limitation.

In reviewing Reliance Standard's decision, the district court properly determined that even if it could be considered *de novo* wrong (a point which the district court did not need to consider), Reliance Standard's denial of Johnson's claim was reasonable based on the information in the Administrative Record and the language in the LTD Policy itself. The district court found this to be true particularly where the conditions and symptoms for which she received treatment, consultation and medication during the look back period were ultimately attributable to

scleroderma even if it had not yet been officially diagnosed. Reliance Standard's decision is also consistent with the Eleventh Circuit's decision in *Ferrizzi*, in which this Court interpreted the *same* Pre-existing Conditions Limitation language and held that the applicability of the Limitation is not dependent upon a diagnosis. The district court also properly determined that even if Reliance Standard operated under a structural conflict of interest, Johnson had not met her burden of establishing that the denial of her claim was tainted by a conflict of interest, where the denial was entirely consistent with the policy language and *Ferrizzi*. Although sympathetic to Johnson's plight, the district court properly recognized that sympathy cannot overcome the applicable legal standards.

# ARGUMENT

## I.     ERISA Standard of Review.

In the Eleventh Circuit, the Court of Appeals is required to review a district court's ruling *de novo*, applying the same legal standards that governed the district court's disposition. *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003); *Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003).  In that regard, courts in the Eleventh Circuit apply a six-step analysis for reviewing a fiduciary's benefit decision under ERISA:

1.    Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

2.    If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end the inquiry and reverse the decision.

3.    If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

4.    If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

5.     If there is no conflict, then end the inquiry and affirm the decision.

6.     If there is a conflict, the conflict should merely be a factor for the court to taken into account when determining whether an administrator's decision was arbitrary and capricious.

*Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989); *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (cleaned up). "At each step, the court makes a determination that results in either progression to the next step or ends the inquiry." *Tippett v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006).

In the first step, the Court must apply the terms of the plan to determine whether the administrator was "wrong" in denying benefits to the claimant. *Brannon v. BellSouth Telecomm., Inc.*, 318 Fed. Appx. 767, 769 (11th Cir. 2009). A claim administrator's denial decision is "wrong" if, under a *de novo* review, the court disagrees with the decision to deny benefits. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). Here, however, although not conceding that its claims decision was *de novo* wrong, Reliance Standard nevertheless did not dispute the point for purposes of its summary judgment motion.

If a court determines the claims administrator's determination was *de novo* wrong, then the second step requires courts look at the terms of the plan and

determine if it grants discretionary authority to the claims administrator to interpret the terms of the Plan and to determine benefits eligibility. The LTD Policy in this case states the following in its Claims Provisions:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(Doc. 28-4, p. 14) (AR14). Where, as in this case, the decision-maker is vested with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the deferential arbitrary and capricious standard of review applies. *See Firestone Tire & Rubber Co.,* 489 U.S. at 115; *see also Alexandra H. v. Oxford Health Ins., Inc.*, 833 F.3d 1299, 1312 (11th Cir. 2016); *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997). Johnson does not dispute that the LTD Policy contains sufficient language for deferential review. (Brief of Appellants, p. 9).

At steps three and four, the court applies an arbitrary and capricious standard and first determines whether defendant's decision to deny benefits was "reasonable." *Blankenship*, 644 F.3d at 1355. The court asks only if there exists a "reasonable basis" to support the claim administrator's decision to deny benefits. *Jett v. Blue Cross & Blue Shield of Ala., Inc*., 890 F.2d 1137, 1140 (11th

Cir. 1989). If reasonable grounds exist, then the Court must defer to the claim administrator and uphold the decision "even if there is evidence that would support a contrary decision." *Blankenship*, 644 F.3d at 1355-56 (quoting *White v. Coca-Cola Co*., 542 F.3d 848, 856 (11th Cir. 2008) (internal citations and quotation marks omitted)).

Even if the "evidence is close," a reasonable denial of benefits cannot be considered arbitrary and capricious and the administrator's decision must be affirmed. *Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1363 (11th Cir. 2008). Thus, it does not matter "[if] the court or anyone else might reach a different conclusion" as long as a reasonable basis for the decision exists. *Turner v. Delta Family-Care Disability and Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 1984); *see also Griffis v. Delta Family-Care Disability,* 723 F.2d 822, 825 (11th Cir. 1984) (holding that a claims administrator's decision "need not be the best possible decision, only one with a rational justification"). If not, the inquiry must end; but, if a reasonable basis exists, the Court must proceed to the final two steps.

As to step five, a conflict of interest exists where the decision-maker both makes eligibility decisions and pays awarded benefits out of its own funds. *Metro Life Ins. Co. v. Glenn,* 554 U.S. 105, 111-12 (2008). That a structural conflict of interest exists here is not disputed. But even where a conflict of interest exists, courts still "owe deference" to the administrator's "discretionary decision-making" as a

whole. *Doyle*, 542 F.3d at 1363. Where a conflict exists and a court must reach step six, the burden remains on the plaintiff - not the defendant - to establish that the decision was tainted by self-interest and, therefore, arbitrary and capricious. *Id.*, at 1360.

Again, the only steps in this framework that were truly disputed by the parties before the district court (and on appeal) were steps three and six and, therefore, the district court properly focused on those two steps.

## II. The District Court Correctly Held that Reliance Standard Reasonably Denied Johnson's Claim for Long Term Disability Benefits Based on the Pre-existing Conditions Limitation in the LTD Policy.

In concluding that Reliance Standard's denial of Johnson's claim for LTD benefits on the ground that it is barred by the LTD Policy's Pre-existing Conditions Limitation is reasonable, the district court relied on the Eleventh Circuit's earlier opinion in *Ferrizzi, supra.*[7] For that reason, a discussion of the facts in *Ferrizzi,* and the Eleventh Circuit's reasons for affirming the lower court's entry of summary judgment in favor of Reliance Standard, is paramount.

In *Ferrizzi*, the plaintiff became covered under an ERISA-governed LTD policy issued by Reliance Standard on January 1, 2015. *Ferrizzi*, 792 Fed. Appx. at

---

[7] Although *Ferrizzi* was not specifically designated for publication, it is highly persuasive since it addressed the same Pre-existing Condition Limitation language involved in this case, except that the Limitation in *Ferrizzi* included a six-month look back period, instead of the three-month look back period in this case.

679. The plaintiff subsequently stopped working on April 23, 2015, claiming that he was totally disabled due to seizures, headaches, memory loss, slurred speech, and loss of mobility. Since Ferrizzi submitted his claim for LTD benefits within one year of his effective date of insurance, Reliance Standard conducted a pre-existing conditions inquiry to determine whether his claimed disability fell within the scope of the limitation, thus barring coverage. *Id.*, at 680. After reviewing all of Ferrizzi's medical records, Reliance Standard determined that he had received treatment for his disabling condition of seizures/pseudo seizures during the look back period and, therefore, it was a pre-existing condition, and the claim was denied. *Id.* Ferrizzi administratively appealed the denial of his claim arguing that his disability was actually due to a later-diagnosed substance abuse/drug dependency problem, and that his treatment for seizures during the look back period was unrelated to his disabling condition. *Id.*

Following its administrative review, which included a lengthy medical record review, as well as a review by an independent board-certified physician who opined that Ferrizzi's substance abuse problem "was a pre-existing condition during the lookback period," Reliance Standard affirmed its claim denial. *Id.*, at 681-83. Ferrizzi subsequently filed an ERISA lawsuit in federal court, where the district court ultimately entered summary judgment in favor of Reliance based on the Pre-existing Conditions Limitation in the policy. *Ferrizzi*, 792 Fed. Appx. at 683.

24

Applying the six-step analysis for reviewing a claim administrator's benefit decision in an ERISA case, this Court affirmed. *Id.*, at 684-86. Since the parties had only briefed the third through sixth steps in the analysis, the lower court and Eleventh Circuit addressed only those steps. *Id.*, at 684. In that regard, this Court focused first on whether Reliance Standard's denial of the plaintiff's claim for LTD benefits was *reasonable* (step three)[8] based on the policy language and the information in the administrative record, recognizing that "'[i]f the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage.'" *Id.*, at 684 (internal citations omitted). This Court acknowledged, however, that it was required to "'look to the plain and ordinary meaning of the policy terms to interpret the contract.'" *Id.*, at 684 (quoting *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th Cir. 2016)).

Ferrizzi argued that his substance abuse problem was not a pre-existing condition since it was not specifically diagnosed until after the lookback period. But this Court rejected that argument based on the plain language of the LTD Policy:

> Ferrizzi insists that the pre-existing condition exclusion cannot apply because he was not diagnosed or treated for substance abuse/drug dependency during the lookback period. As noted in his appeal to Reliance, Ferrizzi does not dispute the existence of a substance abuse/drug

---

[8] This Court's discussion in *Ferrizzi* of the remaining steps in the analysis will be addressed in Section III, *infra.*

dependency illness, but argues instead that he developed drug dependency in early 2015 – *after* the lookback period. However, *the policy's own definition of a "pre-existing condition" does not require a specific diagnosis or a specifically timed diagnosis of a condition for the exclusion to apply.* Under the policy, if Ferrizzi received "treatment, consultation, care of services, including diagnostic procedures, or took prescribed drugs or medicine" for "any Sickness or Injury" that caused, contributed to, or resulted in his "totally disability' from substance abuse/drug dependence, then the policy excludes coverage. *The Reliance policy exclusion does not require a formal diagnosis during the lookback period*, and Ferrizzi's arguments to the contrary are unpersuasive.

*Ferrizzi*, 792 Fed. Appx. at 684-85 (emphasis added) (internal citations omitted in original). The Court stated that based on the plain language in the Limitation, the treatment notes from a single doctor visit could be sufficient to trigger bar coverage. *Id*. at 685.

This Circuit also rejected the plaintiff's arguments that Reliance Standard's independent reviewer had failed to consider all of the relevant evidence. *Id.*, at 685. Recognizing that the policy included language giving Reliance Standard discretion to interpret the terms of the plan and determine eligibility for benefits, this Court ruled that Reliance Standard's claims denial was reasonable:

> Taken as a whole, Ferrizzi's medical records provide sufficient evidence to conclude that Ferrizzi suffered from substance abuse-drug dependency that equated to a "Sickness or Injury" under the Reliance policy during the lookback period. Because a reasonable basis existed to support Reliance's decision to deny benefits to Ferrizzi,

we conclude that Reliance's decision thus was neither arbitrary nor capricious.

*Ferrizzi*, 792 Fed. Appx. at 686.

For reasons that follow, this Court should affirm the lower court's rejection of Johnson's arguments opposing the applicability of the Limitation for the same reasons that this Court affirmed the lower court's rejection of Ferrizzi's arguments.

### A. The Plain Language of the Pre-existing Conditions Limitation in the LTD Policy Does Not Condition Applicability on a Diagnosis.

Johnson's primary argument in this appeal is that the Pre-existing Conditions Limitation does not apply if her scleroderma was not specifically diagnosed during the look back period. As such, Johnson's argument is all about the timing of the actual diagnosis, rather than the actual language of the Limitation. However, the Pre-existing Conditions Limitation does not condition eligibility on a diagnosis at all – but, instead, specifically defines "Pre-existing Condition" as "any Sickness or Injury for which the Insured received medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines" during the look back period. (Doc. 28-4, p. 23) (AR23).

Significantly, in her brief, Johnson does not cite to any language in the LTD Policy that expressly requires that a diagnosis be made *during* the look back period for the Limitation to apply. Rather, citing cases that are distinguishable from this

case in several aspects,[9] Johnson argues that a physician cannot treat a patient "for" a particular condition unless that condition has been diagnosed and, therefore, the inclusion of the word "for" in the Pre-existing Condition limitation necessarily requires a diagnosis, or at the very least, that a particular diagnosis be "reasonably suspected." (Brief of Appellant, pp. 11-12). This Court addressed this very argument in *Ferrizzi* and stated that "the policy's own definition of a 'pre-existing condition' does not require a specific diagnosis or a specifically timed diagnosis of a condition for the exclusion to apply." *Ferrizzi*, 792 Fed. Appx. at 685. In fact, looking at the plain language of the Limitation, it would make little sense to include "diagnostic procedures" within the scope of the Pre-existing Conditions Limitation if the diagnosis, itself, had to be made during the look back period for the Limitation to be applicable. Therefore, based on the language in the LTD Policy and the decision in *Ferrizzi*, the timing of the diagnosis of scleroderma is immaterial to the application of the Limitation if Johnson received medical treatment, consultation, medication or diagnostic procedures for symptoms resulting from scleroderma during the look back period.

---

[9] *See* Section II.D., *infra.*

## B. Johnson Received Medical Treatment, Consultation, and Medication for Her "Sickness" During the Look Back Period.

The pertinent question in this case is not whether Johnson was specifically diagnosed with scleroderma during the look back period but, rather, whether she received medical treatment, consultation, or medication, or underwent diagnostic procedures, for her "sickness" during the look back period. Again, the look back period in this case ran from July 12 through October 12, 2016. Johnson's complaints and consultation with physicians during this period establishes that she was treated for conditions and/or symptoms related to scleroderma during this look back period. But even more importantly, the records indisputably establish that she received treatment, consultation and medication during the look back period for the very conditions and symptoms that purportedly rendered her totally disabled and unable to work.

Johnson's own treating physician, Dr. Querubin, despite noting a primary diagnosis of scleroderma, identified the specific symptoms that prevented her from working as "joint pain, swelling, shortness of breath" and the objective finding of "finger swelling". (Doc. 28, p. 104) (AR135). Dr. Querubin also identified interstitial pneumonitis as a secondary condition contributing to Johnson's disability. (Doc. 28, p. 104) (AR135). Shortly after she stopped working, Dr. Maloon identified Johnson's symptoms as pain in both hands and mild cognitive impairment. (Doc. 28, p. 120) (AR154). Dr. Maloon provided a note dated April 24, 2017, stating

that Johnson was unable to work due to "intractable numbness and pain in her extremities." (Doc. 28, p. 123) (AR157).

Additionally, on August 15, 2016, Johnson was treated by and/or consulted with Nurse Practitioner Clark for complaints of fatigue, muscle weakness, nausea and vomiting. (Document 28-2, pp. 137-138) (AR769-770). On August 23, 2016, Johnson underwent an upper gastrointestinal endoscopy. (Doc. 28-2, pp. 195-196) (AR827-828). On September 6, 2016, Johnson was again treated by and consulted with Nurse Practitioner Clark for complaints of "nausea/vomiting" as well as "nose bleeds, memory loss, body aches, and joint swelling"; the assessments following that evaluation included edema, GERD, and epistaxis, among others. (Doc. 28-2, pp. 139-140) (AR771-AR772). On September 13, 2016, Johnson was evaluated by Dr. George, who described Johnson as having "decreased breath sounds [bilaterally]" and diagnosed her with "chronic bronchitis", fatigue, GERD, and obstructive sleep apnea (Doc. 28-2, pp. 141-142) (AR773-AR774). And on September 30, 2016, Johnson treated with Dr. Maloon who described her complaints as including: numbness, pain, and swelling in her distal extremities; hot and cold sensitivity; "[c]olor changes" in her "fingers and toes with cold exposure"; fatigues; difficulty with coordination and loss of motor skills; intermittent left knee numbness; vomiting; blurred vision; syncope; headaches; forgetfulness and cognitive impairment; and various digestive issues, among other things. (Doc. 28, pp. 185-

187) (AR216-AR218). During the look back period, Johnson was prescribed medications for edema, digestive issues, acid reflux, and motion sickness, as well as other anti-inflammatory medication and a muscle relaxer. (Doc. 28-2, pp. 82, 84, 86, 88-89) (AR 714, 716, 718, 720-AR721).

The complaints for which Johnson sought treatment, consultation and medication during the look back period mirror the bases for the disability claim as set forth in Johnson's own application for LTD benefits and Dr. Querubin's Physician Statement submitted in support of the application. Just because her doctors could not pinpoint what was causing all of these particular conditions and symptoms until after the look back period was over cannot and does not obviate the fact that they nevertheless *existed* and they led her to seek treatment, consultation and medication for them during the look back period. In fact, there is no cure for scleroderma, and the treatment for it focuses on the treatment and/or management of its *symptoms and associated conditions*.

Although Johnson suggests that these conditions and symptoms are general and could be caused by diagnoses other than scleroderma, *Johnson herself admits that at least some of the symptoms and conditions are suggestive of scleroderma.*[10]

---

[10] Johnson makes a rather curious argument that "the policy language excludes on the basis of conditions, not symptoms, which were unexplained during the look-back period", to suggest that the lack of a scleroderma diagnosis during the look back period is fatal to the application of the Limitation. (Brief of Appellant, p. 15). However, it is a fine line between "condition" and "symptom" and, as noted above,

31

That distinction makes this case an even stronger one for the application of the Limitation than *Ferrizzi*, since in *Ferrizzi*, the plaintiff was attempting to disassociate all of the symptoms for which he had received treatment during the look back period from his drug dependency diagnosis. Moreover, by including "diagnostic procedures" (such as a gastrointestinal endoscopy) within this definition, that would logically include any tests or procedures conducted during the look back period to try to diagnosis what was causing an insured's symptoms – even if the diagnosis itself came later. Again, Reliance Standard's interpretation is entitled to deference, and under the applicable test, a court "must up-hold an administrator's interpretation if it is reasonable." *Conkright v. Frommert*, 559 U.S. 506, 521, 130 S. Ct. 1640, 1646 (2010). Here, Reliance Standard's interpretation of the Limitation is a reasonable one.

### C. Reliance Standard's Interpretation and Application of the Pre-existing Conditions Limitation in the LTD Policy is Supported by Decisions in Addition to *Ferrizzi.*

Johnson suggests that *Ferrizzi* is the only case that supports Reliance Standard's claim denial based on the Pre-existing Condition limitation. However, in *Bullwinkel v. New England Mutual Life Insurance Co*., 18 F.3d 429 (7th Cir. 1994), the Seventh Circuit, applying ERISA, held that the discovery of a breast lump and

---

various conditions were assessed by her own doctors during the look back period in any event, including GERD and chronic bronchitis, which themselves are suggestive of scleroderma.

diagnostic tests conducted on the lump during the look back period triggered the pre-existing condition exclusion in the policy even though the lump was not definitively diagnosed as cancer until after coverage began. *Id*., at 431. The Court explained that it could "reasonably infer that the breast lump was cancerous in July, and the record presents no competing inferences." *Id*. at 433. Like *Bullwinkel*, Johnson does not argue that the many symptoms for which she consulted with doctors during the look back period were related to anything other than scleroderma. Therefore, we can "reasonably infer" that Johnson's symptoms during the look back period were the result of scleroderma because "the record presents no competing inferences." *Id.* at 433.

Additionally, in *Marshall v. UNUM Life Insurance Co*., 13 F.3d 282 (8th Cir. 1994), the Eight Circuit found a pre-existing condition where the claimant was treated for muscle pain, which was later diagnosed as chronic fatigue syndrome. Although the plaintiff had argued that her disability did not stem from her pre-existing condition, the Eighth Circuit rejected that argument as lacking in support. *Id.* at 284. Here, like in *Marshall*, Johnson's own application for benefits included many of the same symptoms that she was treated for during the look back period.

Many district courts have also recognized that a diagnosis during the look back period is not required for a Pre-existing Condition Limitation to apply. For example, in *Fath v. Unum Life Ins. Co. of Am*., 928 F. Supp. 1147 (M.D. Fla. 1996),

*aff'd sub nom*, *Fath v. Unum Life Ins. Co.*, 119 F.3d 10 (11th Cir. 1997), the court recognized that, like in this case, there was no language in the policy stating that a diagnosis was a prerequisite for the limitation. Therefore, a "formal diagnosis of Plaintiff's condition after the effective date of the policy is irrelevant in this situation in determining whether the preexisting condition exclusion is met." *Id.*, at 1151-52. The plaintiff is *Fath* had also argued that the chiropractic treatment she received prior to her effective date of coverage was for "general health maintenance" and not a specific condition; however, the court stated that "if Plaintiff received any medical care or treatment *for the symptoms of* EDS and Fibromyalgia, including loose joints, dislocation or subluxation, or joint pain between February 1989 and February 1991, then her condition is pre-existing and she would be barred from disability benefits." *Fath,* 928 F. Supp. at 1152 (emphasis added).

A denial based on a pre-existing condition was also upheld in *Law v. Aetna Life Ins. Co.*, No. 2:13-cv-2267-JHH, 2015 U.S. Dist. LEXIS 6404 (N.D. Ala. Jan. 21, 2015). Law had a history of back pain for which he received medication and treatment, including during the policy's look back period. The plaintiff argued that his treatment during the look back period for back pain was unrelated to radiating pain that led to surgery and his disability claim. Looking first to whether the decision to deny the claim was "correct", the court stated that it was "crystal clear" that the limitation applied. *Id*. at *21. In reaching its conclusion, the court explained:

[Plaintiff's] argument that these earlier treatments for his chronic back pain are somehow separate and apart from his disabling condition have no merit. The court refuses to separate the two when the medical evidence clearly does not. There is no evidence in the record to show that the disabling pain was not caused by, or contributed to, these older complaints of back pain.

*Id*. at *22-23.

Similarly, there is no way to distinguish or separate Johnson's treatment in this case for joint swelling, pain and all of her other complaints during the look back period from her disability claim a few months later. The fact that there was a later diagnosis of scleroderma does not alter the fact that Plaintiff's disability, like the one in *Law* and many other cases cites above, was contributed to by her earlier complaints. *Id.*, at *23. Again, some of the earlier complaints/symptoms were even identified in the Physician's Statement that accompanied Johnson's claim for benefits to Reliance Standard.

Additionally, in *Williams v. United of Omaha Life Ins. Co.*, No. 8:20-CV-1001-JSM-AEP, 2012 U.S. Dist. LEXIS 72002 (M.D. Fla. April 12, 2021), the district court upheld the insurer's denial of benefits based on the policy's Pre-existing Condition Limitation, holding that the "[t]he pre-existing health conditions at issue here are neither remote, attenuated, or unrelated to Dr. Williams' alleged disabling condition." *Id.*, at 53. The district court also stated that the plaintiff's "pre-existing condition could not be classified as a latent, undiagnosed, or unappreciated

condition that had no bearing on her alleged disabling condition" and could not be considered as "mere risk factors." *Id.*; *see also, Loza v. American Heritage Life Ins. Co.*, No. CV-09-1118-PHX-DSV, 2012 U.S. Dist. LEXIS 40438 (D. Ariz. 2012), *aff'd* 568 Fed. Appx. 530 (9th Cir. 2014) (holding that the Pre-existing Condition Limitation applied because even though the plaintiff argued that the symptoms for which he received treatment during the look back period could have been caused by some other condition beside his later-diagnosed prostate cancer, he presented no evidence to support that argument); *Larsen v. Prudential Ins. Co. of Am.*, 151 F. Supp. 2d 167, 174 (D. Conn. 2001) (collecting case and holding that the plan's "determination is squarely within the clear and unambiguous language of the policy's exclusion for pre-existing conditions."). Each of these cases supports the *reasonableness* of Reliance Standard's interpretation.

One of the cases relied on by Johnson also supports the reasonableness of Reliance Standard's claim decision. In *Hughes v. Bos. Mut. Life Ins. Co.*, 26 F.3d 264 (1st Cir. 1994) (see Brief of Appellant, pp. 11-12), the policy did not confer discretionary authority on the insurer to interpret the terms of the policy and make eligibility determinations and, therefore, the holding in that case was controlled by the *de novo* standard of review. Boston Mutual suggested that "treatment 'for' a condition refers to treatment of any symptom which in hindsight appears to be a manifestation of the condition." *Id.*, at 269. In response, the First Circuit stated: "We

acknowledge *that this would be one reasonable interpretation of the exclusion* …

But Boston Mutual's interpretation is not the only plausible one." *Id*. (emphasis added) (internal citations omitted). Therefore, while the First Circuit did not agree with Boston Mutual under a *de novo* standard of review, its own reasoning would compel a different result under the deferential standard of review applicable in this case.

Many of the other cases cited by Johnson in her brief are completely distinguishable from the present case and, therefore, have no persuasive, much less precedential value in support of Johnson's argument. First, in *Horneland v. United of Omaha Ins. Co*., 717 Fed. Appx. 846 (11th Cir. Nov. 17, 2017) (see Brief of Appellant, pp. 10-11, 13-14), the policy did not include a grant of discretionary authority to the claims administrator and, therefore, the Court reviewed the decision under the *de novo* standard. As such, the Court did not get past the first step in the six-step analysis, which makes it distinguishable from the present case.

Ultimately, this Court in *Horneland,* recognizing that "the underlying cause of Plaintiff's back pain and muscle spasms could constitute an accidental bodily injury, disease, disorder, or condition that would potentially trigger the Pre-Existing Conditions Exclusion", concluded that there were issues of fact that created a "very confusing record" making summary judgment inappropriate and the case was remanded. In doing so, the Court noted that the parties could not even agree on the

identity of the plaintiff's disabling condition. *Id*. at 847. Here, there is no confusion as to the bases for Johnson's disability claim. Returning to *Horneland*, the Court acknowledged that to ultimately prevail, the claimant would have to "thread the eye of this needle" to establish coverage. *Id*. at 857. Here, Johnson failed to do so.

Again, it was reasonable for Reliance Standard to conclude that Johnson treated for a "condition" even though the diagnosis came later, especially where she consulted with doctors for the same symptoms and conditions both prior to her effective date of insurance and after she stopped working. After all, the Limitation applies to "Pre-existing *Conditions*", not prior *diagnoses*. Unlike *Horneland*, the facts in this claim are fully developed and the underlying cause of Plaintiff's symptoms is undisputed. This triggers the Pre-existing Conditions Limitation under the Reliance Standard Policy.

In *McLeod v. Hartford*, 372 F.3d 618 (3d Cir. 2004) (see Brief of Appellant, pp. 13, 16-17), the pre-existing condition limitation was much narrower in scope than the Limitation in this case. Also, the *only* symptom for which the plaintiff received treatment and consultation during the look back period was numbness in her left arm, which could have been a symptom of a number of conditions. *Id*., at 621. It was too much for the court to bar the disability claim related to multiple sclerosis because of this one complaint of arm numbness. In this case, there was much more than one vague complaint. Additionally, the claim denial in *McLeod* was

reviewed under a "heightened" arbitrary and capricious standard of review that was later abrogated by the Third Circuit.[11] *Id*., at 624; *see also Ceccanecchio v. Continental Cas. Co*., 50 Fed. Appx. 66 (3d Cir. 2002) (see Brief of Appellant, pp. 13, 18-19).

In *Pitcher v. Principal Mut. Life Ins. Co*., 93 F.3d 407 (7th Cir. 1996) (see Brief of Appellant, pp. 19-20), "pre-existing condition" was defined to include a "sickness or injury for which a Member … is confined or received treatment or service" during the look back period. *Id*., at 409. It was undisputed that the plaintiff had suffered from a non-disabling fibrocystic breast condition for many years. *Id*., at 412. Principal attempted to characterize the lumps felt by the plaintiff's doctor during the look back period as symptoms of the as-yet undiagnosed breast tumor, but the Seventh Circuit held that the record did not support this speculative characterization. *Id*., at 413-14; *see also Mitzel v. Anthem Life Ins. Co*., 351 Fed. Appx. 74 (6th Cir. 2009) (see Brief of Appellant, p. 16) (noting that was a dispute over which document - the SPD, the LTD Benefit Booklet, or the LTD Benefit Program - governed where each document defined the scope of the pre-existing condition limitation differently); *App v. Aetna Life Ins. Co*., 2009 WL 2475020, *8

---

[11] The Third Circuit recognized that its "heightened arbitrary and capricious" or "sliding scale" test under ERISA was incompatible with the Supreme Court's holding in *MetLife v. Glenn. See Est. of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009). *See also*, *Doyle*, 542 F.3d at 1360, reaching the same conclusion in the Eleventh Circuit.

(M.D. Pa. 2009) (see Brief of Appellant, p. 12) (finding that a diagnosis was required in order to apply the policy's Pre-existing Condition limitation where the definition of "pre-existing condition" specifically included the word "diagnosis" in it.). Again, the facts in this case are different from the cases relied on by Johnson.

Johnson also cites to *Lawson v. Fortis Ins. Co.*, 301 F.3d 159 (3d Cir. 2002) (see Brief of Appellant, p. 12), *Ermenc v. American Family Mutual Ins. Co.*, 221 Wis.2d 474, 585 N.W.2d 679 (Wis. 1998) (see Brief of Appellant, p. 13), and *Hall v. Continental Cas. Co.*, 207 F. Supp. 2d 903 (W.D. Wis. 2002) (see Brief of Appellant, p. 13). But those cases were not governed by ERISA and, therefore, the reasonableness test under the arbitrary and capricious standard of review did not apply. And, in *Lawson*, applying ordinary contract principles, the Third Circuit recognized that both parties' interpretations of the pre-existing condition limitation in the health insurance policy were *reasonable* which created an ambiguity in the policy that had to be construed in favor of the insured. *Lawson*, 301 F.3d at 162-66. But that same finding of reasonableness means that Reliance Standard's conclusion in this case cannot be considered arbitrary and capricious.

Quoting from *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1484 (11th Cir. 1995), Johnson states that it is arbitrary and capricious for an administrator to add requirements not stated in the plan. (Brief of Appellant, p. 15). But that is exactly what she asked the district court,

and now asks this Court, to do. Johnson seeks to add the word "diagnosis" to the Pre-existing Conditions Limitation in the LTD Policy. This is a new requirement that is neither stated in the Policy nor suggested by the language in it. Therefore, her position must be rejected.

For all of these reasons, the district court's determination that Reliance Standard's denial of Johnson's claim based on the Pre-existing Condition Limitation in the LTD Policy is reasonable and should be affirmed.

## III. The District Court Properly Held That Johnson Failed to Establish That the Denial of Benefits was Otherwise Tainted By a Conflict of Interest.

Lastly, in addressing the sixth step in the analysis, Johnson again argues that even if Reliance Standard's denial of her claim is found to be reasonable under step 3, it was nevertheless tainted by a structural conflict of interest, thereby making its arbitrary and capricious. As in the district court, she argues: (1) Reliance Standard failed to "undertake a deliberate and principled reasoning process" because it failed "to specify which symptoms actually relate to scleroderma or even mention scleroderma" in its denial letters; and (2) Reliance Standard breached the ERISA regulations by relying on a reviewing doctor (Dr. Cooper) who was without the appropriate medical expertise because he was an endocrinologist, rather than a rheumatologist. (Brief of Appellants, pp. 28-29). Once again, the district court's

rejection of these two arguments is guided, in part, by this Court's decision in *Ferrizzi, supra.*

In *Ferrizzi*, this Court was similarly tasked with considering whether Reliance Standard's conflict of interest tainted its denial of the plaintiff's claim and recognized that the plaintiff - not the defendant – bears that burden. *Ferrizzi,* 792 Fed. Appx. at 684 (quoting *Doyle*, 542 F.3d at 1360). This Circuit held that when considering the sixth step in the analysis, the focus is generally on whether Reliance Standard followed its own claims procedures and protocols:

> Here, Ferrizzi has failed to show that the structural conflict of interest present in this case rendered Reliance's decision unreasonable. Notably, Ferrizzi has not argued that Reliance failed to follow its own procedures in denying his claim. Reliance had stated procedures in place to "promote the neutral, unbiased, and accurate adjudication of claims." When Ferrizzi asked for reconsideration of Reliance's initial denial, Reliance reconsidered the evidence using an independent, medically certified, third-party medical reviewer. Under Reliance's established procedures, this appeal reviewer operated independently; did not report to the financial department; was physically separate from the financial department; and was not compensated based on the decision he reached. Absent evidence that Reliance failed to follow its stated procedures, we cannot say that the structural conflict had any impact on the reasonableness of Reliance's decision.
>
> We conclude that Reliance's decision to deny Ferrizzi's claim under the pre-existing condition language of its policy was a reasonable decision supported by Ferrizzi's medical records, and the presence of a structural conflict has not rendered that decision unreasonable.

*Ferrizzi*, 792 Fed. Appx. at 686.

Here, the district court correctly held that Johnson had failed to meet her requisite burden of proof as to the sixth step of the analysis. First, the district court held that Johnson could not question Dr. Cooper's qualifications without evidence. (Doc. 40, p. 14). Moreover, neither Johnson nor her doctors actually refute Dr. Cooper's opinions. Second, the district court concluded that "[g]iven the Exclusion's reliance on Treatment – rather than diagnosis – during the Look-Back Period", the fact that Reliance Standard did not include "scleroderma" in its denial letters is weak evidence at best that Reliance Standard "did not undertake a deliberate and principled reasoning process." (Doc. 40, p. 15). Ultimately, the district court stated that "[e]ven taking all of Johnson's arguments together, Reliance Standard's decision was neither arbitrary nor capricious when it was entirely consistent with an Eleventh Circuit case interpreting the exact same policy language", specifically *Ferrizzi.*

## **CONCLUSION**

The district court properly determined that it was reasonable for Reliance Standard to deny the disability claim based on the language in the LTD Policy itself, the medical records and this Court's decision in *Ferrizzi.* Additionally, the district court properly determined that even if Reliance Standard operated under a structural conflict of interest, Johnson had not met her burden of establishing that the denial of

her claim was tainted by a conflict of interest and, therefore, did not establish that it was arbitrary and capricious. For the foregoing reasons, the decision of the district court should be affirmed.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

By:  /s/ Joshua Bachrach
    Joshua Bachrach, Esquire
    Two Commerce Square
    2001 Market Street, Suite 3100
    Philadelphia, PA 19103
    215.606.3906 p./215.627.2665 f.
    joshua.bachrach@wilsonelser.com

    Parks K. Stone, Esquire
    3348 Peachtree Road NE, Suite 1400
    Atlanta, GA 30326
    470.419.6650 p./470.419.6651 f.
    parks.stone@wilsonelser.com

    *Attorneys for Defendant/Appellee*
    *Reliance Standard Life Insurance*
    *Company*

Date: May 3, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as the brief contains 9,862 words, excluding those parts exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6), as this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

By:   <u>/s/ Joshua Bachrach</u>
Joshua Bachrach, Esquire
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
215.606.3906 p./215.627.2665 f.
joshua.bachrach@wilsonelser.com

Parks Stone, Esquire
3348 Peachtree Road NE, Suite 1400
Atlanta, GA 30326
470.419.6650 p./470.419.6651 f.
parks.stone@wilsonelser.com

*Attorneys for Defendant/Appellee*
*Reliance Standard Life Insurance*
*Company*

Date: May 3, 2024

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellant was electronically filed on May 3, 2024, with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Heather K. Karrh, Esquire
hkarrh@rhkpc.com
Rogers, Hofrichter & Karrh, LLC
225 S. Glynn Street, Suite A
Fayetteville, GA 30214
*Attorneys for Appellant (via CM/ECF)*

Respectfully submitted,

**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER, LLP**

By:   /s/ Joshua Bachrach
Joshua Bachrach, Esquire
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
215.606.3906 p./215.627.2665 f.
joshua.bachrach@wilsonelser.com

Parks K. Stone, Esquire
3348 Peachtree Road NE, Suite 1400
Atlanta, GA 30326
470.419.6650 p./470.419.6651 f.
parks.stone@wilsonelser.com

*Attorneys for Defendant/Appellee*
*Reliance Standard Life Insurance*
*Company*