APPEAL NO. 23-13443-AA

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### CHERIESE JOHNSON,

**Plaintiff-Appellant**

**vs.**

### RELIANCE STANDARD LIFE INSURANCE COMPANY,

**Defendant-Appellee**

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA

---

### REPLY BRIEF OF PLAINTIFF-APPELLANT

---

Heather K. Karrh
Ga. Bar No. 408379
ROGERS, HOFRICHTER & KARRH, LLC
225 S. Glynn Street, Suite A
Fayetteville, GA 30214
(770) 460-1118

Dated: June 24, 2024

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1, Appellant certifies that the following individuals have an interest in the outcome of the above-referenced case:

| | | |
|---|---|---|
| Trial Court Judge: | Hon. Steven D. Grimberg | |
| | N.D. Georgia, Atlanta Division | |
| Attorneys: | Heather K. Karrh, Esq. | (Appellant) |
| | Rogers, Hofrichter & Karrh, LLC | |
| | Joshua Bachrach, Esq. | (Appellee) |
| | Parks Stone, Esq. | (Appellee) |
| | Wilson Elser Moskowitz | (Appellee) |
| | Edelman & Dicker, LLP | |
| Persons: | Cheriese Johnson | (Appellant) |
| Corporations: | Reliance Standard Life | (Appellee) |
| | Insurance Company | |
| | Tokio Marine Holdings Inc. | |
| | Parent of Appellee (TMNF) | |

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement......................i

Table of Contents......................................................................................ii

Table of Citations.....................................................................................iii

Argument and Citation of Authority........................................................1

Conclusion..............................................................................................25

Certificate of Compliance.......................................................................26

Certificate of Service..............................................................................27

# TABLE OF CITATIONS

| Cases | Page |
|---|---|
| App v. Aetna Life Ins. Co., 2009 WL 2475020, *8 (M.D. Pa. 2009) | 5, 20 |
| Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011) | 9 |
| Bradshaw v. Reliance Standard Life Ins. Co., 707 F. App'x 599, 607 (11th Cir. 2017) | 2, 9 |
| Bullwinkel v. New England Mut. Life Ins. Co., 18 F.3d 429, 430 (7th Cir. 1994) | 12, 18 |
| Ceccanecchio v. Continental Cas. Co., 50 Fed. App'x. 66, 72 (3d Cir. 2002) | 6, 22 |
| Doroshow v. Hartford Life & Acc. Ins. Co., 574 F.3d 230 (3rd Cir. 2009) | 18 |
| Ermenc v. American Family Mutual ins. Co., 221 Wis.2d 478, 484, 585 N.W.2d 679, 682 (Wis. 1998) | 6, 22, 23 |
| Fath v. UNUM Life Ins. Co. of Am., 928 F. Supp. 1147, 1148 (M.D. Fla. 1996), aff'd sub nom. Fath v. Unum Life Ins. Co., 119 F.3d 10 (11th Cir. 1997) | 13 |
| Ferrizzi v. Reliance Standard Life Insurance Company, 792 Fed. App'x. 678, 684 (11th Cir. 2019) | 1, 9, 10, 11, 25 |
| Hall v. Continental Cas. Co., 207 F. Supp.2d 903, 912 (W.D. Wis. 2002) | 6 |

**<u>Cases</u>**                                                                        **<u>Page</u>**

<u>Hardester v. Lincoln Nat. Life Ins. Co.</u>,                                          18, 19
52 F.3d 70, 71 (4th Cir. 1995)

<u>Hardester v. Lincoln Nat. Life Ins. Co.</u>,                                          8
841 F. Supp. 714, 716–17 (D. Md.),
rev'd, 33 F.3d 330 (4th Cir. 1994),
 reh'g granted and opinion vacated (Oct. 13, 1994),
on reh'g, 52 F.3d 70 (4th Cir. 1995),
and aff'd, 52 F.3d 70 (4th Cir. 1995)

<u>Horton v. Reliance Standard</u>,                                                      9
141 F.3d 1038, 1040 (11th Cir. 1998)

*<u>Hughes v. Bos. Mut. Life Ins. Co.</u>,                                              4, 5,
26 F.3d 264, 269 (1st Cir. 1994).                                                       23

<u>Larsen v. Prudential Ins. Co. of Am.</u>,                                            16
151 F. Supp. 2d 167 (D. Conn. 2001).

<u>Lavery v. Restoration Hardware Long Term Disability Benefits Plan</u>,               23
937 F.3d 71, 80 (1st Cir. 2019)

<u>Law v. Aetna Life Ins. Co.</u>,                                                       13, 14
No. 2:13-CV-2267-JHH,
2015 WL 260833, at *4 (N.D. Ala. Jan. 21, 2015)

<u>Lawson v. Fortis Ins. Co.</u>,                                                        5
301 F.3d 159, 165 (3rd Cir. 2002)

<u>Loza v. Am. Heritage Life Ins. Co.</u>,                                              16
No. CV-09-01118-PHX-DGC,
2012 WL 1019033  (D. Ariz. Mar. 26, 2012),
 aff'd, 568 F. App'x 530 (9th Cir. 2014)

| **Cases** | **Page** |
|---|---|
| Marshall v. UNUM Life Ins. Co.,<br>13 F.3d 282 (8th Cir. 1994) | 12, 13 |
| McLeod v. Hartford,<br>372 F.3d 618, 626 (3d Cir. 2004) | 6, 15,<br>20, 21 |
| Meyer v. Classified Ins. Co.,<br>192 Wis.2d 463, 468–69,<br>531 N.W.2d 416, 418 (Ct.App.1995) | 23 |
| *Mitzel v. Anthem Life Ins. Co.,<br>351 F. App'x 74 (6th Cir. 2009) | 20 |
| Mogil v. California Physicians Corp.,<br>218 Cal.App.3d 1030, 267 Cal.Rptr. 487, 491 (1990) | 8 |
| *Pitcher v. Principal Mutual Life Insurance Co.,<br>93 F.3d 407, 410 (7th Cir.1996) | 15,22 |
| Ross v. W. Fid. Ins. Co.,<br>881 F.2d 142, 144 (5th Cir. 1989) | 19 |
| Smith v. United of Omaha Life Ins. Co.,<br>No. 3:17CV450TSL-RHW,<br>2018 WL 3519813, at *2 (S.D. Miss. May 21, 2018),<br>aff'd, 776 F. App'x 825 (5th Cir. 2019). | 17, 18 |
| Tippitt v. Reliance Standard Life Ins. Co.,<br>457 F.3d 1227 (11th Cir. 2006) | 19, 20 |
| White v. Coca-Cola Co.,<br>542 F.3d 848, 857 (11th Cir. 2008) | 19 |

**Cases**                                                                   **Page**

Williams v. United of Omaha Life Ins. Co.,                                   14,15,
No. 8:20-CV-1001-JSM-AEP,                                                    16
2021 WL 1648526, at *3 (M.D. Fla. Apr. 12, 2021)

**Treatises**

10A Couch on Insurance 2d, § 41A:13                                         8

**Statutes and Rules**                                                      **Page**

Fed. R. App. P. 32(a)(5)                                                    27

Fed. R. App. P. 32(a)(6)                                                    27

Fed. R. App. P. 32(a)(7)(B)(iii)                                            27

vi

# ARGUMENT AND CITATIONS OF AUTHORITY

## I.    Introduction

It is undisputed that Johnson's disabling condition of scleroderma was not "suspected" by her doctors during the look-back period.  Johnson experienced non-specific symptoms during the look-back period which were attributable to other conditions.  In such a situation it is not reasonable to argue that Johnson was treated "for" scleroderma and thus under the plain language of the pre-existing condition clause Johnson's claim for benefits is not excluded.   All federal circuits (six in total) that have addressed this issue have found that the insurer's interpretation was unreasonable.  The Eleventh Circuit has not addressed this issue.  These facts present an issue of first impression for the Eleventh Circuit.  Appellee Reliance Standard Life Insurance Company (hereinafter "Reliance Standard")   argues that <u>Ferrizzi v. Reliance Standard Life Insurance Company</u>, 792 Fed.App'x. 678, 684 (11th Cir. 2019) applies.  It does not.  In <u>Ferrizzi</u>, the Eleventh Circuit found that the plaintiff's condition was suspected during the look-back period and thus was pre-existing.  Here, if the Eleventh Circuit were to uphold the District Court's decision it would be finding for the first time that an unsuspected illnesses with general symptoms is barred by a prior treatment clause. The Eleventh Circuit would be deciding differently from First, Third, Fourth, Fifth, Sixth and Seventh Circuits and would create a circuit

split where none exists. Such a decision would frustrate both of ERISA's central goals: (1) protection of the interests of employees and (2) uniformity in the administration of employee benefit plans. Bradshaw v. Reliance Standard Life Ins. Co., 707 F. App'x 599, 607 (11th Cir. 2017).

## II. The District Court erred when it construed Johnson's argument to require an exact diagnosis during the look-back period.

Reliance Standard claimed (and the District Court accepted) that Johnson had argued that there must be an "actual diagnosis" during the look-back period for the pre-existing condition to apply. (Doc. 40 Pg 11). Johnson did not argue this. Rather Johnson is arguing that the law of every Federal Circuit that has addressed this issue states that in order for a prior treatment pre-existing condition clause to actually exclude a disability that disability had to be at least "suspected" during the look-back period. There is no evidence in this case whatsoever that Johnson's doctors suspected that she had scleroderma during the look-back period from July 12, 2016, and October 12, 2016. Johnson's doctors did not attempt to "rule out" scleroderma. Johnson's doctors did not run or order any tests for scleroderma. Johnson's doctors did not speculate or theorize that she might have scleroderma. Indeed, during the look-back period Johnson's doctors did not even mention the term scleroderma. (Doc. 28-2 Pgs 769-770, 771-772, 773-774, 827-28) (Doc 28 Pg 216-218). Moreover, Johnson's doctors did not diagnose Johnson with any conditions that

Reliance Standard claims in its appellate brief are related to scleroderma (Raynaud's and Interstitial Lung Disease) during the look-back period. Interstitial Lung disease was first diagnosed on February 13, 2017 well after the look-back period. (Doc. 28-2 Pg 779) (Doc. 28-3 Pg 941). Likewise, Raynaud's phenomenon was first mentioned on March 9, 2017. (Doc. 28 Pg 225).[1]

During the look-back period Johnson was experiencing non-specific symptoms that are attributable to many other conditions. Indeed during the look-back period Johnson's neurologist diagnosed "probable somatoform disorder, fibromyalgia and borderline lupus erythematosus." (Doc 28 Pg 216-218). Johnson was also found to have Helicobacter pylori, epistaxis, GERD, edema, hypertension, and candidiasis of the vulva and vagina, gastritis, a hernia, bronchitis, fatigue and sleep apnea by other providers during the look-back period. (Doc 28 Pg 108-109). None of these diagnoses or probable sicknesses are scleroderma or the conditions which Reliance Standard claims are related thereto.

In an attempt to bolster its decision, Reliance Standard cites medical articles from the internet to show that some of the symptoms Johnson had during the look-

---

[1]In her previous briefing Johnson accepted that Raynaud's and Interstitial Lung Disease were known conditions during the look-back period but this is untrue when the actual medical records are examined. Reliance Standard's doctor agrees that these conditions were not mentioned during the look-back period. (Doc 28-3 Pg 941).

back period were in fact caused by scleroderma.  Johnson does not dispute that in retrospect it does appear that her scleroderma manifested during the look back period, but this is irrelevant.  Some of the symptoms that Johnson had during the look-back period likely were related to her scleroderma, but legally that does not matter.

Again, there are two basic types of pre-existing conditions in insurance contracts.  A routine pre-existing condition clause aims to bar coverage for claims arising from conditions existing before the effective date of an insurance policy; such policies focus on the prior origination or prior manifestation of the condition.  Hughes v. Bos. Mut. Life Ins. Co., 26 F.3d 264, 269 (1st Cir. 1994).

The second type and the one we have here "might be described more accurately as a 'recent treatment' exclusion" as its application actually depends upon treatment "for" the condition during the relevant period, not a retroactive conclusion as to existence of the condition during the relevant period.  Id.  A pre-existing condition is defined in this policy as:

> any Sickness or Injury, *for which*, the Insured received medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to the Insured's effective date of insurance.  (Doc 28-4 Pg AR  23) (emphasis added).

With this type of condition Courts examine what it means to be treated "for" a condition during the "look-back period" sufficient to trigger a pre-existing

exclusion. When examining what the word "for" means there are two lines of legal reasoning. Firstly, case-law holds that the plain ordinary meaning of the word "for" implies intent, and a doctor cannot treat a patient "for" a condition unless he/she knows what the condition is. Lawson v. Fortis Ins. Co., 301 F.3d 159, 165 (3rd Cir. 2002). As such, a doctor cannot be said to have treated a patient for a condition during the look-back period, sufficient to trigger a pre-existing condition exclusion, unless that condition was diagnosed, or at the very least reasonably suspected. Hughes, at 270.

In Lawson, two days before the effective date the insured went to the ER with cough, fever, elevated pulse, and a swollen eye. Id. She was diagnosed with an infection. Id. Five days after the policy effective date—the insured was diagnosed with leukemia. Id. Fortis denied coverage of the leukemia as pre-existing, asserting that the symptoms displayed at the ER visit were caused by leukemia and therefore the insured received treatment for leukemia during the look-back period. Id. The court found that there was no evidence that leukemia ever entered the mind of her doctor. Therefore, it would not make sense to say that her doctor offered medical advice or treatment for leukemia. Id. at 166; see also, App v. Aetna Life Ins. Co., 2009 WL 2475020, *8 (M.D. Pa. 2009) (A mis-diagnosis or an unsuspected condition is a not a pre-existing condition).

5

Secondly, overlapping this principle that a doctor must be aware of a condition in order to be treating their patient for that condition is a line of cases holding that the presence of non-specific symptoms during the look-back period (that could be caused by the medical condition for which the claimant ultimately claims benefits but could also be caused by other medical conditions) is insufficient to render the medical condition for which the claimant ultimately claims benefits pre-existing. <u>Ermenc v. American Family Mutual ins. Co.</u>, 221 Wis.2d 478, 484, 585 N.W.2d 679, 682 (Wis. 1998). See also, <u>Hall v. Continental Cas. Co.</u>, 207 F. Supp.2d 903, 912 (W.D. Wis. 2002); <u>McLeod v. Hartford</u>, 372 F.3d 618, 626 (3d Cir. 2004); <u>Ceccanecchio v. Continental Cas. Co.</u>, 50 Fed. App'x. 66, 72 (3d Cir. 2002).

Both of the above cited lines of cases apply favorably to Johnson's situation. Johnson was not diagnosed with scleroderma during the look-back period. <u>Importantly, Reliance Standard has no evidence that scleroderma was even suspected</u>. Thus, there is no evidence that this was a sickness "for" which Johnson received treatment. Further the symptoms that actually existed during the look-back period in the records were:

> fatigue, muscle weakness, nausea, and vomiting, nose bleeds, memory loss, body aches, joint swelling, cough, reflux, post-syncopal episode, low blood sugar, numbness, coldness, pain involving extremities, inability to control bowels, blurred vision, fever, headaches, decreased

appetite, dizziness, generalized aching, swelling of feet and
hands, and loss of motor skills.  (Doc 28 Pg 108-109).

These are general symptoms that could be related to any number of conditions

beyond scleroderma.  Indeed, during the look-back period many of these symptoms

were attributed to many other sicknesses.  Johnson was treated for fibromyalgia,

probable somatoform disorder, borderline lupus erythematosus, Helicobacter pylori,

candidiasis of the vulva and vagina, a hernia, sleep apnea, depression and

hypertension, but she was never determined to have scleroderma even as a "probable"

or "suspected" sickness. (Doc 28 Pg 108-109) (Doc 28 Pg 218) (Doc 28-2 Pg 771).

The plain meaning of the policy is that the condition must be at least suspected

during the look-back period.  Other clauses in the policy bolster Johnson's argument

further.   Again, a pre-existing condition is defined in this policy as:

> any Sickness or Injury, *for which*, the Insured received
> medical Treatment, consultation, care or services,
> including diagnostic procedures, or took prescribed drugs
> or medicines, during the three (3) months immediately
> prior to the Insured's effective date of insurance.  (Doc 28-
> 4 Pg  23) (emphasis added).

"Sickness" itself is defined in relevant part as an "illness or disease causing Total

Disability which begins while insurance coverage is in effect for the Insured."  (Doc

28-4 Pg 10).  Thus under the plain terms of the policy in order for the pre-existing

condition to apply Johnson must have been treated for an actual "illness" or "disease"

not a list of general symptoms which could be and were attributable to other illnesses.

Johnson's plain meaning interpretation of the pre-existing clause in this case is in line with the underlying purposes of pre-existing condition clauses. These clauses exist to protect "insurers from fraudulent applicants seeking coverage for known diseases while protecting innocent premium paying insureds from being deprived of benefits for pre-existing conditions of which they have no knowledge." Hardester v. Lincoln Nat. Life Ins. Co., 841 F. Supp. 714, 716–17 (D. Md.), rev'd, 33 F.3d 330 (4th Cir. 1994), reh'g granted and opinion vacated (Oct. 13, 1994), on reh'g, 52 F.3d 70 (4th Cir. 1995), and aff'd, 52 F.3d 70 (4th Cir. 1995), quoting, Mogil v. California Physicians Corp., 218 Cal.App.3d 1030, 267 Cal.Rptr. 487, 491 (1990); accord, 10A Couch on Insurance 2d, § 41A:13 (stating that the purpose of the clause is to "shelter the insurer from claims arising out of conditions existing and known by the insured prior to the inception of the policy."). No part of the purpose of preventing fraud would be served here by excluding scleroderma when Johnson had no idea during the look-back period that she had this illness. Further, to deny coverage here would punish an innocent premium paying insured.

## III. The District Court correctly placed the primary burden of proof on Reliance Standard.

The District Court correctly "assumed" that Reliance Standard bears the burden

of proof in this case. (Doc 40 Pg 9). Reliance Standard does have discretion in the policy, but that fact does not benefit it. Reliance Standard's entire case is that Johnson's claim is barred by the Pre-existing Condition exclusion. Reliance Standard did not dispute that Johnson was disabled. Thus, the only issue is whether Reliance Standard met its burden to prove that its decision was made in good faith. In its appellate brief, Reliance Standard only cites cases where the plaintiff and not the insurer bears the burden of proof. This is despite the fact that Reliance Standard has been a party to three Eleventh Circuit cases which found that it bears the burden on exclusions. Horton v. Reliance Standard, 141 F.3d 1038, 1040 (11th Cir. 1998); Ferrizzi, at 684 (11th Cir. 2019); Bradshaw, at 606. Reliance Standard is well aware that it bears the burden of proof, that the plain ordinary person meaning of the pre-existing provision governs and that under ERISA law, clauses that exclude coverage are interpreted narrowly. Bradshaw, at 606-607.

Reliance Standard cannot meet its burden. The only argument that Reliance Standard made was that other Courts have accepted its interpretation of prior treatment clause. However, not one case cited by Reliance actually supports its argument. Because Reliance Standard cannot prove that its decision had a rational justification, the inquiry ends. Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011). If somehow this Circuit were to find Reliance Standard's

decision rational the burden would shift back to Johnson to prove that Reliance Standard's conflict of interest tainted the decision. <u>Ferrizzi</u>, at 686. While unnecessary, Johnson easily meets her burden.

**IV.    The District Court erred in its interpretation of the relevant case law.**

**A.    The cases cited by Reliance Standard do not support its position that treatment for an unsuspected condition during the look-back period bars coverage.**

None of the cases relied upon by Reliance Standard actually interpreted pre-existing conditions to exclude unsuspected illnesses. Reliance Standard's entire argument is that other Courts have deemed its interpretation (that unsuspected illnesses are excluded under a prior treatment clause) to be reasonable, but Reliance Standard does not cite one case that supports its position.

In its appellate brief, Reliance Standard relied primarily upon <u>Ferrizzi</u>, *supra*, acknowledging that it is unreported, but arguing that it is highly persuasive. However, the reasoning of <u>Ferrizzi</u> actually supports Johnson. Indeed, every case cited by Reliance Standard which found that the pre-existing clause barred coverage involved either a <u>suspected</u> condition and/or one where the symptoms could only be the cause of the disease that was ultimately diagnosed. Again there is not one scintilla of evidence that Johnson's doctors "suspected" scleroderma and Johnson's symptoms during the look-back period were general and could have been and were

attributable to other diagnoses.

The panel in <u>Ferrizzi</u> did state that a specific diagnosis during the pre-existing condition look-back period is not necessary in order for the pre-existing condition exclusion to apply. However, the Court found that Ferrizzi's illness was "suspected" during the look-back period. On administrative appeal the <u>Ferrizzi</u> plaintiff contended that his disability was the result of substance abuse and dependency. <u>Id</u>. The <u>Ferrizzi</u> court noted:

> Ferrizzi received "medical treatment" for substance abuse/drug dependency on at least one occasion during the look-back period: on December 10, 2014, when Dr. Mendez decided *not* to provide drugs when Ferrizzi presented with "drug seeking behavior." <u>Id</u>. at 685.

Further, three different entries from Ferrizzi's medical records from November and December 2014—indisputably within the six-month look-back period—documented his "attempts to obtain prescriptions for benzodiazepines from three different doctors on at least three different occasions." <u>Id</u>. at 686. The fact that Ferrizzi did not receive the drugs from his doctor demonstrates that his doctor <u>suspected</u> he was an addict and medically treated him as such. Moreover, drug seeking behavior is a highly specific symptom that only corresponds to the disease of dependency. Thus, Reliance Standard's primary case does not support its position here.

Similarly, <u>Bullwinkel v. New England Mut. Life Ins. Co.</u>, 18 F.3d 429, 430 (7th Cir. 1994) involved a suspected condition that was determined to be pre-existing. There, the plaintiff noticed a lump in her left breast during the look-back period. <u>Id</u>. Her physician made no conclusion whether the cyst was cancerous or benign, but he was "concerned about the possibility of cancer." <u>Id</u>. He referred her to a surgeon for biopsy, telling her: "Let's be safe." <u>Id</u>. After the insurance policy became effective, the plaintiff had the lump removed and tests revealed cancer. <u>Id</u>. Again, Reliance Standard has no evidence that scleroderma was suspected by any of Johnson's doctors during the look-back period. Johnson's lung biopsy was not until over three months after the look-back period. (Doc. 28-3 Pg 896). In its Appellate brief, Reliance Standard attempts to argue that <u>Bullwinkel</u> actually supports its position by finding that the record had "no competing inferences" in that the plaintiff did not argue that the lump was related to anything but cancer. Reliance Standard claims that Johnson does not argue that her symptoms were related to anything but scleroderma. This is false. In her previous briefing Johnson argued that many of the symptoms which Reliance Standard stated were pre-existing have nothing to do with scleroderma like her depression and her yeast infections. Nonetheless, this false argument does not render <u>Bullwinkel</u> supportive of Reliance's position that a prior treatment clause excludes an unsuspected condition.

12

In Marshall v. UNUM Life Ins. Co., 13 F.3d 282, 283 (8th Cir. 1994), the plaintiff was treated during the look-back period for chronic fatigue. Within one year, she claimed chronic fatigue syndrome as a disability. Id. Plaintiff's illness was highly suspected as her own doctor examined the criteria for chronic fatigue syndrome during the look-back period. Id. at 284. None of Johnson's doctors examined the criteria for scleroderma during the look-back period.

Fath v. UNUM Life Ins. Co. of Am., 928 F. Supp. 1147, 1148 (M.D. Fla. 1996), aff'd sub nom. Fath v. Unum Life Ins. Co., 119 F.3d 10 (11th Cir. 1997) is likewise unavailing. In Fath, it is true the District Court did not believe that an exact diagnosis was necessary. However, the Court did not truly examine the term "for." The primary reason that the Court denied benefits in Fath was that the claimant appeared to be gaming the system. Id. at 1152. The Court correctly pointed out that the purposes of pre-existing condition clauses is to "prevent fraudulent attempts to receive coverage for known, undisclosed pre-existing conditions." Id. at 1153, citations omitted. Reliance Standard has no evidence undermining Johnson's character and no evidence that Johnson knew she had the disabling disease of scleroderma during the look-back period.

Law v. Aetna Life Ins. Co., No. 2:13-CV-2267-JHH, 2015 WL 260833, at *4 (N.D. Ala. Jan. 21, 2015) is completely unhelpful. In Law, the plaintiff claimed

disability on the basis of lumbar spondylosis. <u>Law</u>, at *4. The Court found that it was "clear that Plaintiff was <u>diagnosed</u> and treated for chronic back pain and 'lumbar derangements,' received diagnostic and treatment services for the condition, and was prescribed pain medication for back pain and back spasms during the look-back period." <u>Id</u>. at *8. (Emphasis supplied). Thus, in <u>Law,</u> the plaintiff was actually diagnosed during the look-back period with the disease for which he claimed disability. Again Reliance Standard has no such evidence that Johnson's doctors even suspected scleroderma much less diagnosed and treated her for it during the look-back period.

The case cited by Reliance Standard at the hearing of this matter does not support its position. <u>Williams v. United of Omaha Life Ins. Co.</u>, No. 8:20-CV-1001-JSM-AEP, 2021 WL 1648526, at *3 (M.D. Fla. Apr. 12, 2021) (Doc 47). In <u>Williams</u>, the plaintiff became disabled as a result of a stroke occurring after the look-back period. <u>Id</u>. at *8. Prior to the look-back period, Williams had a lengthy history of heart conditions. <u>Id</u>. at *4. During the look-back period, Williams was followed for the <u>known</u> medical conditions of mitral valve stenosis and high risk pregnancy. <u>Id</u>. at *5. She received treatment (medications) and testing (serial echocardiograms) for the same. <u>Id</u>. at *5-6. The record (both Williams' doctors and the insurer's) established that the mitral valve stenosis and high risk pregnancy were

the cause of Williams' disabling stroke. Id. at *7-8. The court then found that as the conditions mitral valve stenosis and high risk pregnancy were both known and treated during the look-back period and caused her subsequent disability, the disability was properly subject to the pre-existing condition exclusion. Id. at 14-15. Here, no one diagnosed or even suspected Johnson as having scleroderma during the look-back period. Johnson underwent no testing for scleroderma during the look-back period. Johnson was prescribed no medications for scleroderma during the look-back period. Moreover, there are no allegations that any of Johnson's known conditions (Helicobacter pylori, epistaxis, GERD, edema, hypertension, and candidiasis of the vulva and vagina, gastritis, hernia, bronchitis, sleep apnea, probable Somatoform Disorder, Fibromyalgia, and Borderline Lupus Erythematosus) somehow caused scleroderma.

Moreover, legally, Williams does not stand for the proposition that the existence of non-specific symptoms during the look-back period render the later-diagnosed condition pre-existing. In fact, the Williams court cited favorably McLeod, *supra* and Pitcher v. Principal Mutual Life Insurance Co., 93 F.3d 407, 412 (7th Cir.1996) (cases relied upon by Johnson) for precisely the opposite proposition:

> Similarly, her pre-existing conditions could not be classified as latent, undiagnosed, or unappreciated conditions.... Cf. McLeod v. Hartford Life and Acc. Ins.

Co., 372 F.3d 618, 620 (3d Cir. 2004)...; Pritcher, [sic] 93
F. 3d at 411-17. Williams, at *15.

Here, Johnson's scleroderma was latent, undiagnosed and unappreciated and thus the Williams Court would have found for Johnson.

The two new cases cited by Reliance Standard in its Appellate brief are also completely unhelpful to its position. Loza v. Am. Heritage Life Ins. Co., No. CV-09-01118-PHX-DGC, 2012 WL 1019033 (D. Ariz. Mar. 26, 2012), aff'd, 568 F. App'x 530 (9th Cir. 2014); Larsen v. Prudential Ins. Co. of Am., 151 F. Supp. 2d 167 (D. Conn. 2001). In Loza, the plaintiff claimed cancer benefits for prostate cancer. Id. at *1. During the 12 month look-back period he underwent a PSA test because he had an enlarged prostate and because he told his doctor that he had a family history of prostate cancer. Id. Naturally given this history, the plaintiff's doctor tested for prostate cancer. Id. Unsurprisingly, the Court found that his "suspected" condition was pre-existing. Id. Again, none of Johnson's doctors tested for scleroderma during the look-back period.

In Larsen, the plaintiff had a long history of Gastroesophageal Reflux Disease (GERD) and was treated for GERD during the look-back period. Id. at 170-173. He later went out on disability for GERD. Id. There was no dispute in Larsen that the plaintiff was treated "for" his condition during the look-back period. Here Johnson's doctors did not treat her "for" scleroderma as it was not even suspected during the

look-back period much less already diagnosed.

In its Appellate brief, Reliance Standard has failed to cite even one case that actually supports its position that "unsuspected" conditions are excluded under the pre-existing condition clause. A District Court in Mississippi was faced with a similar unsupported argument recently. <u>Smith v. United of Omaha Life Ins. Co.</u>, No. 3:17CV450TSL-RHW, 2018 WL 3519813, at *2 (S.D. Miss. May 21, 2018), aff'd, 776 F. App'x 825 (5th Cir. 2019). In <u>Smith</u>, United acknowledged that Smith was not diagnosed with metastatic ovarian cancer (the sickness causing her disability) until three months after the "look-back" period, had ended. <u>Id</u>. United submitted, however, that her claim was properly denied, as the medical records showed that she received treatment during the look-back period for a recurrent right pleural effusion, which was a symptom of the ovarian cancer. <u>Id</u>. Smith did not deny that the recurrent pleural effusion was caused by the cancer. <u>Id</u>. She argued, though, that since the condition which had caused her disability was not pleural effusion but rather metastatic ovarian cancer, and since she did not receive medical treatment, advice or consultation, care or services including diagnostic measures, or had drugs or medicines prescribed or taken for metastatic ovarian cancer in the three months before she became insured under the policy, then her claim was wrongly denied. <u>Id</u>. The Court agreed finding under the arbitrary and capricious standard that the insurer's

position was unreasonable. Id. at 13. The Court stated that while it was undisputed that Smith's pleural effusion was caused by the metastatic ovarian cancer since her symptoms were non-specific and the medical records did not indicate that her medical providers believed the pleural effusion was likely caused by metastatic ovarian cancer, United could not reasonably have concluded that she received treatment "for" metastatic ovarian cancer during the look-back period. Id. Like Reliance Standard, United proffered some of the same cases (Bullwinkel, *supra*, and Doroshow v. Hartford Life & Acc. Ins. Co., 574 F.3d 230 (3rd Cir. 2009)) claiming that those cases supported its position. Id. at 11. The Court went through each case and found that none supported the argument that an unsuspected condition was barred by a prior treatment clause. Id. at 11-13.

## B. The District Court erred in finding that there were only a "smattering" of cases supporting Johnson's position.

The District Court acknowledged that case law from other Circuits and States supported Johnson's position, but referred to those cases as a "smattering." (Doc. 40 Pg 11). Johnson does not agree that the First, Third, Sixth and Seventh Circuits and the State of Wisconsin constitute a "smattering" of supportive jurisdictions. Further, Johnson has subsequently discovered that the Fourth and Fifth Circuits also agree that a claimant cannot be deemed to have been treated "for" conditions when those conditions were not "suspected" during the look-back phase. Hardester v. Lincoln

Nat. Life Ins. Co., 52 F.3d 70, 71 (4th Cir. 1995); Ross v. W. Fid. Ins. Co., 881 F.2d 142, 144 (5th Cir. 1989).

Having cited no supportive cases for its position, Reliance Standard then attempts to distinguish Johnson's cases by stating that some of the cases did not involve deferential review as required in this case. Specifically Reliance Standard argues that some of the cases were decided under the *de novo* standard and some were decided under state law. Reliance Standard is arguing that Johnson is relying on the doctrine of *contra proferentem,* and claiming that this doctrine does not apply in ERISA cases in which the insurance company has discretion. As to the second point, that is not legally correct. The Eleventh Circuit applies c*ontra-proferentem* at the first step of its test. White v. Coca-Cola Co., 542 F.3d 848, 857 (11th Cir. 2008). But the doctrine of *contra proferentem* does not apply here because Reliance Standard has not suggested a reasonable interpretation of its policy, and thus, there is no ambiguity. As explained in Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227 (11th Cir. 2006):

> "[A]mbiguity exists if the policy is susceptible to two or more reasonable interpretations that can fairly be made, and one of these interpretations results in coverage while the other results in exclusion." .... If there is no ambiguity and only "one reasonable construction is possible, the court will enforce the contract as written.".... If the plan is ambiguous, under Georgia decisions and our own we must construe the ambiguities against the drafter, and the

claimant's interpretation is considered correct. Id. at 1235
(citations omitted and emphasis supplied).

No matter the standard of review, the majority of the cases relied upon by Johnson do not utilize *contra proferentem* because those cases find Reliance's interpretation (treatment for unsuspected conditions and non-specific symptoms are sufficient to trigger this type of pre-existing clause) to be patently unreasonable.

For example, Johnson relies upon Mitzel v. Anthem Life Ins. Co., 351 F. App'x 74 (6th Cir. 2009). The Sixth Circuit specifically ruled that the use of *contra proferentum* was not necessary because the language of the policy unambiguously did not exclude symptoms during the look-back period, which, while in hindsight were consistent with the ultimate diagnosis of Wegener's granulomatosis ("WG"), were non-specific and could have been caused by any number of medical conditions. Id. at 81-84. Further, the ultimate diagnosis of WG was never suspected during the look-back period. Id. at 84.

Likewise, App., *supra*, was decided under the arbitrary and capricious standard without resort to *contra proferentem*. Id. at *5. The App Court found that Aetna's interpretation that an unsuspected condition manifesting non-specific symptoms was subject to the pre-existing exclusion to be "without reason." Id. at *5-9.

Further, McLeod, *supra*, also involved a policy in which the defendant had discretion. Id. at 624. Reliance Standard attempted to distinguish this case claiming

20

that it is inapplicable because it was decided under the older heightened standard.

(Doc. 29 p. 13). However, while the McLeod Court did state that a stricter standard

might have made a difference, it also stated that had Hartford submitted a "plausible

reason for its interpretation" then perhaps the result would have been different. Id.

at 624. This indicates that the McLeod holding would have been the same under any

standard. The Third Circuit explained:

> Under Hartford's interpretation of the Plan, any symptom
> experienced before the excludable condition is diagnosed
> could serve as the basis for an exclusion so long as the
> symptom was not later deemed inconsistent with that
> condition. For example, a policy holder could seek medical
> care for shortness of breath and be diagnosed with the
> remnants of a very bad cold, and have a heart attack two
> months later. According to its interpretation, Hartford
> would then be able to claim that the original shortness of
> breath was a "symptom or manifestation" of the
> underlying, and undiagnosed, heart disease, rendering the
> heart disease a "pre-existing" condition for purposes of
> excluding the policy holder from LTD benefits. The
> problem with using this type of *ex post facto* analysis is
> that a whole host of symptoms occurring before a "correct"
> diagnosis is rendered, or even suspected, can presumably
> be tied to the condition once it has been diagnosed. Thus,
> any time a policy holder seeks medical care of any kind
> during the look-back period, the "symptom" that prompted
> him to seek the care could potentially be deemed a
> symptom of a pre-existing condition, as long as it was later
> deemed consistent with symptoms generally associated
> with the condition eventually diagnosed. Id. at 625.

Reliance's interpretation in this case is identical to Hartford's in McLeod and is

likewise <u>not even plausible</u> much less reasonable.

Moreover, <u>Ceccanecchio</u>, *supra*, was decided under the arbitrary and capricious standard, and the Third Circuit held specifically that there was no need to invoke *contra proferentem* because the insurance company's decision was unreasonable. <u>Id</u>. at 73. The insurer made the same decision that Reliance Standard did when it decided that the pre-existing condition clause applied even where there was no diagnosis prior to the effective date, and the presence of only non-specific symptoms. <u>Id</u>. at 67-68.

Other cases cited by Johnson which were decided under *de novo* review found that arguments similar to the one which Reliance Standard makes here were unreasonable. In <u>Pitcher</u>, *supra*. the Seventh Circuit found, "Interpreting the language of Principal's insurance policy in ...an ordinary and popular sense ...we hold that Pitcher did not receive a 'treatment or service' for breast cancer prior to September 17, 1992 because...she was being monitored for the longstanding fibrocystic breast condition and not cancer during the pre-coverage period." <u>Id</u>. at 412. The Court further wrote:

> Because there is no ambiguity in the language of the insurance policy...and because the parties' dispute over coverage may be resolved in Pitcher's favor without resort to the rule of *contra proferentem* ..., we see no need to rely upon this rule of interpretation. <u>Id</u>. at 418.

Similarly, in <u>Ermenc</u>, *supra*, which was decided under state law, the Wisconsin Court

of Appeals did not resort to *contra proferentem* in ruling that non-specific symptoms during the look-back period did not invoke the pre-existing exclusion.  Id. at 486. Indeed, this court found such an interpretation to be so unreasonable that it would render the policy illusory holding:

> Something more than general, nonspecific symptoms that become clear only by use of hindsight is required. To hold otherwise would reach an absurd result: denial of coverage would be so easy as to make the insurance contract meaningless.... We will not interpret an insurance contract to violate public policy. Cf. Meyer v. Classified Ins. Co., 192 Wis.2d 463, 468–69, 531 N.W.2d 416, 418 (Ct.App.1995) (noting that public policy disfavors illusory coverage). Id. at 486.

In its brief, Reliance Standard attempts to distinguish Hughes, *supra*, because it was decided under the *de novo* review.  Reliance Standard states that Hughes' "own reasoning would compel a different result under the deferential standard of review." (Brief of the Appellee Pg 37).   However when the First Circuit subsequently addressed this same issue in an ERISA case decided under the arbitrary and capricious standard it decided against the insurer.   Lavery v. Restoration Hardware Long Term Disability Benefits Plan, 937 F.3d 71, 80 (1st Cir. 2019) ("Aetna's flatly incorrect interpretation of the Plan strongly suggests that either Aetna has been mistakenly relying on an overly broad reading of the pre-existing condition exclusion or that it is behaving like a conflicted party intent on advocating for a desired result

rather than a fiduciary explaining its decision.")

**V.     The District Court erred by finding that the conflict of interest was unremarkable.**

Since Reliance Standard's interpretation of the pre-existing clause  was unreasonable it is not necessary to reach this step.  However,  the District Court also erred in finding that the conflict was unremarkable.  Specifically, the Court found that it was of no consequence that Reliance Standard never actually stated which symptoms during the look-back period it contended were specifically associated with scleroderma.  Reliance Standard simply listed all of Johnson's symptoms including symptoms like anxiety, which cannot reasonably be linked to a later diagnosis of scleroderma.  (Doc 28 Pg 109-10) (Doc 28 Pg 115-119).  Indeed, the District Court made the exact same clear error when it stated that "the problems for which she received medication and medical treatment during the look-back period were <u>all</u> attributable to scleroderma" in the face of symptoms which have nothing to do with scleroderma.   (Doc 40 Pg 13) (emphasis added).  This failure to specify which symptoms actually relate to scleroderma or even mention scleroderma in the final letter demonstrates that Reliance Standard did not actually decide that Johnson's scleroderma was pre-existing much less undertake a deliberate and principled reasoning process.  The alternative is that Reliance Standard is genuinely arguing that symptoms such as anxiety and depression are caused by scleroderma which is

ridiculous. A non-conflicted entity would have sifted through the evidence instead of claiming that every symptom was related to scleroderma.

Finally, Reliance Standard breached the ERISA regulations by relying on the wrong type of reviewing doctor, one without appropriate the medical expertise to render an opinion here. 29 C.F.R. § 2560.503-1(h)(3)(v). In its Appellate brief Reliance Standard argues that the focus should be on whether "Reliance Standard followed its own claims procedures and protocols" citing <u>Ferrizzi</u>. (Brief of the Appellee at 42). However, nothing in <u>Ferrizzi</u> finds that an administrator is justified in ignoring federal regulations.

## <u>CONCLUSION</u>

For the above reasons, Johnson respectfully requests that this Court reverse the District Court's grant of judgment to Reliance Standard and remand this case to the District Court with instructions to find that the pre-existing exclusion does not bar coverage, to grant benefits up to at least May 15, 2018 and to remand the case back to Reliance Standard to determine disability after that date. Johnson also requests interest at an appropriate rate and attorney's fees, both on appeal and before the District Court.

Respectfully submitted this <u>24th</u> day of June, 2024.

<u>s/Heather K. Karrh</u>

Rogers, Hofrichter & Karrh, LLC   Heather K. Karrh
225 S. Glynn Street, Suite A       Ga. State Bar No. 408379
Fayetteville, GA 30214
(770) 460-1118                     Attorney for Appellant
hkarrh@rhkpc.com

# CERTIFICATE OF COMPLIANCE

1.　This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5919 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of the Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect X4, 14 point, Times New Roman.

_s/ Heather K. Karrh_
Attorney for Appellant Cheriese D. Johnson

Dated: June 24, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this day the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system and the attorney listed below is a registered user of the electronic filing system. Moreover an original and six copies were hand filed with the court and one paper copy was sent to the below attorney via U.S. Mail.

Parks K. Stone
Wilson Elser Moskowitz Edelman & Dicker, LLP
3348 Peachtree Road, N.E., Suite 1400
Atlanta, GA 30326

Joshua Bachrach
Wilson Elser Moskowitz Edelman & Dicker, LLP
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103

Respectfully submitted this 24$^h$ day of June, 2024.

*s/Heather K. Karrh*
Heather K. Karrh
Ga. State Bar No. 408379

Attorney for Appellant

Rogers, Hofrichter & Karrh, LLC
225 S. Glynn Street, Suite A
Fayetteville, GA 30214
(770) 460-1118
hkarrh@rhkpc.com